Ronnie STRICKLIN, Richard B. Rosenfeld, and James Michael Strickler, individually and on behalf of others similarly situated, Plaintiffs,

v.

The REGENTS OF the UNIVERSITY OF WISCONSIN, Charles D. Gelatt, Walter F. Renk, Maurice B. Pasch, James W. Nellen, Jacob F. Friedrick, Mrs. Howard V. Sandin, Gordon R. Walker, A. Matt Werner, Bernard C. Ziegler, William C. Kahl, and Fred Harvey Harrington, their Agents, Successors, Employees, Attorneys and all those acting in concert with them or at their direction or under their control, Defendants.

No. 69–C–38.

United States District Court
W. D. Wisconsin.

March 18, 1969.

---

Percy L. Julian, Jr., Melvin F. Greenberg, Sander N. Karp, Madison, Wis., for plaintiffs.

Robert W. Warren, Atty. Gen., Charles A. Bleck, Warren M. Schmidt, Asst. Attys. Gen., Madison, Wis., for defendants.

JAMES E. DOYLE, District Judge.

Each of the three plaintiffs was enrolled as a student at the University of Wisconsin in Madison until he was suspended by the Board of Regents March 6, 1969. They bring this action against the Regents and the President of the University, and their agents, seeking a declaration that the suspensions violated the due process clause of the Fourteenth Amendment to the Constitution of the United States, seeking injunctive relief consistent with the declaration, and seeking damages.[1] They have moved for a temporary restraining order requiring their reinstatement. The motion was heard March 12, 1969, on affidavits submitted by the parties. On March 13, 1969, I entered an opinion describing the test which I intended to apply in deciding the motion for temporary restraint,

---

1. Plaintiffs undertake to maintain the action on behalf of several classes described in the complaint. For present purposes, I do not reach the propriety of the class action and I treat the action as if it had been brought by plaintiffs only as individuals.

and provided an opportunity for the parties to supplement the record with further affidavits. Plaintiff Strickler and the defendants have elected to submit further affidavits.

■ Jurisdiction is claimed under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1343(3) and 1343(4), among other statutes. Jurisdiction is present. The defendants have clearly acted under color of state law. The question is whether the "right" of which they have deprived the plaintiffs is a right, privilege, or immunity secured to the plaintiffs by the Constitution of the United States.

I find the following facts: On and before March 6, 1969, each of the plaintiffs was an enrolled student in the university, in good standing. On March 6, 1969, the Board of Regents met; heard an oral presentation by the Chief of the Department of Protection and Security of the university in which he described disorders on the campus which had occurred February 27, 1969, and earlier, and in which he referred specifically to violent conduct in which each of the plaintiffs was said to have engaged; and adopted a resolution. The resolution recited that violence had occurred on the campus February 27; that there were strong indications that it would be repeated; and that "the Administration of the Madison campus has shown reasonable grounds to cause us to believe that [the plaintiffs] have participated both in causing the violence on February 27, 1969, and in earlier attempts to disrupt University-run or University-authorized activities on the Madison Campus". By the resolution the Regents suspended the plaintiffs "immediately", pending a hearing on charges to be brought by the administration. The administration was directed to bring such charges on or before March 8, and the hearing was ordered to commence on March 19, unless another date were to be set by the Board's hearing agent after consultation with counsel for the administration and for the students. A distinguished former member of the Supreme Court of Wisconsin was appointed as a hearing agent, to make findings of

fact and to report his findings and recommendations to the Board. The Regents resolved that the Board would review the three cases at the earliest possible date on the record compiled by the hearing agent.

Within a day or two thereafter, each of the plaintiffs was notified of his immediate suspension, and each of them was furnished with a specification of charges and a notice of the March 19 hearing.

On March 4, 1969, the Vice Chancellor for Student Affairs commenced an effort to reach each of the plaintiffs by phone. He reached two of them March 4 and one on March 5. To each of the three the Vice Chancellor read the following statement (with appropriate name changes):

"I should like a few minutes to read a statement to you. You are James M. Strickler? (He answered: 'Yes.') May I proceed? (He answered: 'Yes.')

"This is to inform you that allegations have been made against you involving intentional conduct that seriously damages or destroys University property or attempts to seriously damage or destroy University property, and involving intentional conduct that indicates a serious danger to the personal safety of other members of the University community.

"In order to give you an opportunity to present your side of the case informally before a decision whether or not to bring charges is made, I would like you to respond by phone now or see me before noon this Wednesday, March 5, 1969. I will attempt to answer any questions you may have regarding the procedures which will be followed if charges are brought against you. A copy of the Regent Bylaws on Student Discipline and Faculty Document 226, both of which outline these procedures are available in Room 123 Bascom Hall.

"Please understand that you need not respond during this phone call nor when you come to see me nor make any response or statement which you believe might tend to incriminate you.

Should you decide to respond, what you say will be used by the Administration in deciding whether or not to file charges. Should you decide not to respond, the Administration will decide about filing charges on the basis of information available to it."

Two of the three plaintiffs did make and keep appointments with the Vice Chancellor prior to the Regents' meeting March 6. Each was informed that no response was required of him. One was told that the Vice Chancellor's role was to serve as liaison between students and the administration. The other was told that the Vice Chancellor was prepared to answer questions concerning university procedures. Neither requested a specification of the charges against him. Neither made any statement about his conduct on February 27 or earlier.

The third student phoned the Vice Chancellor on March 6 after the Regents had acted, and saw the Vice Chancellor on March 6. There was a discussion of what had happened at the Regents' meeting and a description of the charge contained in the notice of his suspension.

Prior to his suspension by the Regents March 6, none of the plaintiffs was furnished with a notice that a meeting of the Regents would be held March 6, none was furnished with any specification of the charges against him to be considered by the Regents, none was furnished with a notice that any charge against him would be considered by the Regents at its March 6 meeting, and none was given an opportunity to be heard by the Regents or by an agent designated by the Regents for this purpose.

At no time since March 6 has any one of the plaintiffs been given an opportunity to be heard by the Regents, or by an agent designated by them for the purpose, on the question whether his suspension should continue until the Regents have acted in his case following the March 19 hearing.

Each of the plaintiffs has been suspended from March 6 to the present time. There is no intention upon the part of the Regents to reinstate any of them between the present time and the time at which the Regents act in his case following the March 19 hearing.

Defendants do not contend that the suspension of 13 days (March 6–19), and probably more, represents a disciplinary sanction imposed upon any of the plaintiffs because he committed the acts which are to be the subject of the March 19 hearing. Such a contention, if made, would fail. A suspension for such a substantial interval imposed as a sanction for misconduct, without prior specification of charges, notice of hearing, or hearing, would violate due process. See Woods v. Wright, 334 F.2d 369 (5th Cir. 1964); Dixon v. Alabama State Bd. of Educ., 294 F.2d 150 (5th Cir. 1961), cert. den., 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); Moore v. Student Affairs Comm. of Troy State Univ., 284 F.Supp. 725 (M.D.Ala.1968); Schiff v. Hannah, 282 F.Supp. 381 (W.D.Mich. 1966) (en banc); Esteban v. Central Mo. State College, 277 F.Supp. 649 (W.D.Mo. 1967); Knight v. State Bd. of Educ., 200 F.Supp. 174 (M.D.Tenn.1961).

However, the contention of the defendants is that because the continued presence of each of these plaintiffs would endanger persons and property on the campus, he may be suspended, without specification of charges, notice of hearing, or hearing, until the time at which a decision is reached in his case following a hearing.

In this opinion I will deal only with university disciplinary situations in which it is realistic that serious sanctions, such as expulsion or suspension for a significant period of time, may ultimately be imposed. I will employ the terms "preliminary hearing" and "full hearing" to designate two types of hearings in disciplinary cases. I will apply the term "interim suspension" to a suspension imposed upon a student pending a decision in his case following a "full hearing", as distinguished from a suspension for a fixed period of time which may be imposed as the ultimate sanction.

This case thus involves an "interim suspension", in the absence of a "preliminary hearing", pending the holding of a "full hearing" to be followed by a decision whether to impose a serious ultimate sanction.

A "Joint Statement on Rights and Freedoms of Students" by the Association of American Colleges, the American Association of University Professors, the National Student Association, the National Association of Student Personnel Administrators, the National Association of Women Deans and Counsellors, and the American Association of Higher Education, includes this provision:

"C. *Status of Student Pending Final Action*

"Pending action on the charges, the status of a student should not be altered, or his right to be present on the campus and to attend classes suspended, except for reasons relating to his physical or emotional safety and well-being, or for reasons relating to the safety and well-being of students, faculty, or university property." [2]

In an interim opinion and order entered March 14, 1969, I concluded that these plaintiffs had discharged their initial burden to show that they had been suspended for a substantial period of time without prior specification of charges, notice of hearing, or hearing. I concluded that the burden had shifted to the defendants to show that the suspension of each of these three plaintiffs, without specification of charges, notice of hearing, or hearing, pending a determination by the Regents following a hearing in his case, was in fact required by reasons relating to the physical or emotional safety and well-being of each plaintiff, or by reasons relating to the safety and well-being of other students, faculty, other university personnel or university property. The standard embodied in my March 14 opinion, obviously, is the standard contained in the "Joint Statement" quoted above. It is a fair and reasonable standard, entitled to recognition as an essential ingredient of the procedural due process guaranteed by the Fourteenth Amendment. The difficulty lies in a proper implementation of the standard.

The standard involes two distinct elements: danger [3] and timing.

■ Unless the element of danger to persons or property is present, suspension should not occur without specification of charges, notice of hearing, and hearing. The preliminaries to the hearing and the hearing itself should constitute what I have called a "full hearing"; that is, a procedure which affords all of the elements of due process which must constitutionally precede the imposition of the sanction of expulsion or the imposition of the sanction of suspension for a substantial period of time.

■■ When the appropriate university authority has reasonable cause to believe that danger will be present if a student is permitted to remain on the campus pending a decision following a full hearing, an interim suspension may be imposed. But the question persists whether such an interim suspension may be imposed without a prior "preliminary hearing" of any kind. The constitutional answer is inescapable. An interim suspension may not be imposed without a prior preliminary hearing, unless it can be shown that it is impossible or unreasonably difficult to accord it prior to an interim suspension. Moreover, even when it is impossible or unreasonably difficult to accord the student a preliminary hearing prior to an interim suspension, procedural due process requires that he be provided such a preliminary hearing at the earliest practical time. In the absence of such a require-

---

2. 53 A.A.U.P.Bull. 365, 368 (1967).

3. Although I use the word "danger", I do not imply that there may not be circumstances in which sufficient urgency is present although danger is absent. I use the word "danger" because this is a fair short-hand expression for the kind of factors upon which defendants rely in the present case.

ment, a student may be suspended in an *ex parte* proceeding, *for as much as 13 and probably about 18 days* (as in the present cases), without any opportunity, however brief and however limited, to persuade the suspending authority that there is a case of mistaken identity or that there was extreme provocation or that there is some other compelling justification for withholding or terminating the interim suspension.

The Regents have recognized the justice and necessity of such a rule. Sections 5(b) (1) and (2) of Chapter V ("Student Discipline") of their By-laws, adopted July 19, 1968, provide:

"(1) The administration may, in those cases where there is a strong indication that a student's misconduct will be repeated or continued or where the administration believes it is necessary to permit the University to carry on its functions, impose immediate suspension with resultant loss of all student rights and privileges, pending hearing before the all-faculty disciplinary committee. The student has a right to immediate hearing on the limited question of whether suspension should remain in effect until the full hearing is completed.

"(2) In all situations other than set out in (1) above, the Administration, after adequate investigation and notice and opportunity to be heard to the student, is empowered to impose any disciplinary punishment less severe than suspension. In any such case a student may appeal and request a hearing before the all-faculty disciplinary committee."

Here the Regents, exercising their reserved power to deal directly with a disciplinary case (Section 5(a) of Chapter V of the By-laws), have withheld from these plaintiffs a "right" which the Regents have conferred upon students whose disciplinary cases are dealt with by the administration: namely, the "right to immediate hearing on the limited question of whether suspension should remain in effect until the full hearing is completed".

Whether the Regents have honored their own By-laws is not a federal question. Nor is it a question with constitutional overtones, except to the extent that a procedure required by a by-law coincides with a procedure required by the Constitution of the United States.

The defendants have filed numerous affidavits in this court in support of the reasonableness of the Regents' conclusion that the immediate suspension of each of these plaintiffs was necessary to avoid danger to persons or property. These proofs are to the effect that each of the plaintiffs was in fact guilty of violent or threatening behavior on February 27 or earlier. No objective person could fail to be impressed by this showing.

But there has been no showing whatever that it was impossible or unreasonably difficult for the Regents, or an agent designated by them for the purpose, to provide a preliminary hearing prior to the March 6 interim suspension order (the most recent conduct complained of occurred February 27). And there has been no showing whatever that it has been impossible or unreasonably difficult for the Regents, or an agent designated by them for the purpose, to provide a preliminary hearing since March 6 on whether the interim suspension should continue until the time at which a decision has been reached following a full hearing.

This court is clearly not the forum for an initial adversary proceeding on the question whether a particular student is guilty of a particular act or omission justifying disciplinary action within the university. Had a reasonably adequate preliminary hearing been furnished to each of the plaintiffs within the university, and had a showing been made there comparable to that now attempted here, and had the Regents concluded that interim suspension was warranted, and had the plaintiffs then attacked the interim suspensions in this court as a denial of procedural due process, the issue would have lent itself to rather

ready disposition. But this is not the state of the record upon which I must act.

In this opinion I have used the term "preliminary hearing" to denote procedures less rigorous than those (referred to as a "full hearing") which must precede the ultimate imposition of a serious disciplinary sanction. I have not undertaken to define the ingredients of a minimally adequate "preliminary hearing", and it is unnecessary to do so here since the Regents have provided no specification whatever, no notice whatever, and no hearing whatever, with respect to the imposition or continuance of the interim suspension.

Counsel for the defendants, and for the plaintiffs, have cited this court's opinion and order in Marzette v. McPhee, D.C., 294 F.Supp. 562 (1968), which involved a somewhat similar situation. I believe that the views expressed herein are generally compatible with those expressed in *Marzette*. To the extent that the provisions of the order actually entered in *Marzette* failed forthrightly to vindicate the guarantees of procedural due process, I now consider that order ill-advised.

The right of a student in a public university to procedural due process with respect to interim suspensions is by its very nature shortlived. But the significance of the right is not diminished by its inherent brevity. It must be vindicated when, as here, the case demands it.

█ I take notice that an extended enforced absence from the university results in irreparable harm to a student. I find that each of the plaintiffs will be irreparably harmed by a continuation of the interim suspension which commenced March 6.

Accordingly, upon the basis of the entire record herein, it is hereby ordered:

That each of the plaintiffs be reinstated as a student at the University of Wisconsin in Madison, effective at noon March 19, 1969, with the same rights, privileges, and immunities which attached to their status as students prior to their suspension; provided, however, that nothing in this order shall be con-

strued to prevent the defendants, or their agents, from proceeding to consider and impose an interim suspension of any of the plaintiffs, on the condition that the requirements of procedural due process stated in this opinion and order are observed; and provided, further, that nothing in this order shall be construed to prevent the defendants, or their agents, from proceeding with the hearing scheduled March 19, 1969, or from any similar hearing, or from taking appropriate disciplinary action against any of the plaintiffs following any such hearing.