Roland BUCK et al., Plaintiffs,

v.

William L. CARTER, Individually and as President of Wisconsin State University at Whitewater, Wisconsin, et al., Defendants.

No. 69-C-322.

United States District Court
W. D. Wisconsin.
Jan. 7, 1970.

Percy L. Julian, Jr., Madison, Wis., for plaintiffs.

Charles Bleck, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

The complaint herein, and the affidavits of the plaintiffs (who are students at the Wisconsin State University at Whitewater, Wisconsin) in support of their motion for a temporary restraining order, allege that following certain incidents, the plaintiffs, other than plaintiff Cargile, were summoned to a meeting with the defendant Carter on December 16, 1969, and the plaintiff Cargile was summoned to a meeting with defendant Carter on December 17, 1969. (It appears that the circumstances concerning the Cargile meeting on December 17 are indistinguishable from those concerning the December 16 meeting, for the purposes of this opinion and order. For convenience, therefore, I will discuss the matter as though all of the plaintiffs had been summoned to, and had attended, the December 16 meeting, and I will refer to both meetings as the December 16 meeting.)

Following the meeting with defendant Carter, plaintiffs Buck, Robinson, Browne, Payne, Barnes, Dickerson, Bacon, Jones, Thomas, and Cargile were suspended on December 17 as students at the University, "until such time as a hearing and determination has been made" on charges against them. The notice of the temporary suspension included a finding by defendant Carter, "from the events of December 16, 1969 at the Phi Chi Epsilon house as more fully set forth in the Notice of Preliminary Hearing," that the suspended students' "continued presence on this campus poses a clear and present danger to the university community and to yourself." The notice of the temporary suspension also stated that a "hearing on the merits will be held on January 5, 1970 and you will be furnished with a formal notice of hearing and statement of charges."

The motion presently before the court is for a temporary restraining order cancelling the suspension and permitting the suspended plaintiffs to continue as students in good standing, pending the full hearing and determination on the charges against them. The basis for the motion is that the procedures employed in imposing the temporary suspension violate the due process clause of the Fourteenth Amendment to the Constitution of the United States.

In Stricklin v. Regents of University of Wisconsin, 297 F.Supp. 416 (1969), I held that a suspension for a substantial interval, imposed as itself a sanction for misconduct, without prior specification of charges, notice of hearing, and hearing, violates due process. I held that, pending a "full hearing" on the charges against a student, due process is not violated by a temporary suspension for reasons relating to his physical or emotional safety and well-being or for reasons relating to the safety and well-being of students, faculty, or university property. I held further, however, that such a temporary suspension must be preceded by a "preliminary hearing", unless it can be shown that it has been impossible or unreasonably difficult to hold such a preliminary hearing prior to imposition of

a temporary suspension; and, when such impossibility or unreasonable difficulty is present, the preliminary hearing must be provided àt the earliest practical time following the imposition of the temporary suspension. In *Stricklin* there had been no preliminary hearing, nor was there any showing that it would have been impossible or unreasonably difficult to hold such a preliminary hearing. I said that I was using the term "preliminary hearing" "to denote procedures less rigorous than those (referred to as a 'full hearing') which must precede the ultimate imposition of a serious disciplinary sanction." 297 F.Supp., at 422. I observed that I was not obliged in *Stricklin* "to define the ingredients of a minimally adequate 'preliminary hearing.'" *Ibid.*

For the purpose of this motion only, and from the record thus far developed in this action, I find that shortly after midnight, on the morning of December 16, 1969, a group of about 20 persons entered the Phi Chi Epsilon fraternity house, some of whom were armed with clubs; that members of the group physically attacked and beat several of the occupants of the house, and extensively damaged furnishings and windows; and that while the said group was present in the house, a gun was fired twice into a room into which about six occupants of the house had retreated to escape harm.

The central problem now before the court is to define the function of a "preliminary hearing" prior to such a temporary suspension, and to determine those ingredients of such a preliminary hearing which should be constitutionally required in order that the function of the preliminary hearing be fulfilled.

The answers must be sought in the factual contexts in which the questions are likely to arise.

We must begin with a situation in which the university authorities receive information that a student has engaged in some conduct which is probably a violation of some law, whether in the form of a university rule or otherwise.

The first step would appear to be to make an initial evaluation of the reliability of the information received, both with respect to the occurrence of the incident and with respect to the identity of the student involved, and to make such immediate further investigation as the circumstances would reasonably permit. For the purpose of the present motion, and upon the basis of the affidavit of the defendant Carter, I find that it was not unreasonable for him to make an initial evaluation that the information which he had received was reasonably reliable, particularly with respect to the proposition that an incident involving considerable violence had indeed occurred, and also with respect to the proposition that the plaintiffs had participated in it.

The second inquiry would appear to be whether the conduct reported is of such nature and quality, and whether it occurred in such a setting, as reasonably to indicate that the prompt separation of the actor from the life of the campus community is required by reasons relating to his physical or emotional safety and well-being, or for reasons relating to the safety and well-being of students, faculty, or university property. In the present case, it was not unreasonable to conclude that those students who had been members of the group which invaded the fraternity house should be promptly separated for reasons relating to the safety and well-being of other students.

The next step would appear to be to provide, at the earliest opportunity, an opportunity to the student to appear before an appropriate officer or agency of the university, to be informed of the nature of the offense of which he has been accused, and to be given an opportunity to make such statement as he may wish to make before the decision is reached on an interim suspension. It is to be expected that the notice of such an opportunity in such situations will be short, and that there will sometimes be difficulty in locating the student promptly for the purpose of providing him with

the notice. In the present case, the efforts at notification were not unreasonable, and each of the plaintiffs did in fact appear before the defendant Carter prior to the imposition of the temporary suspension. At the time of his appearance, each of the plaintiffs was informed, in terms reasonably adequate for the immediate purpose, of the nature of the offense of which he had been accused, and each of them was given an opportunity, reasonably adequate for the immediate purpose, to make whatever statement he wished to make.

With respect to the actual subsequent course of the preliminary hearing, it would appear that the requirements of due process must remain somewhat flexible. For example, if the student admits his guilt promptly, it is probably constitutionally unnecessary to take any further steps prior to the imposition of an interim suspension. On the other hand, if the student offers a detailed statement to the effect that he was not present at the time and place of the incident, and that there are witnesses, whom he identifies, to the fact that he was elsewhere at the time, it is probably constitutionally necesary to make such prompt investigation of his alibi as the circumstances permit. If the student admits his presence at the time and place of the incident, but offers a plausible explanation of his part in it which, if believed, might reasonably constitute an excuse or might reasonably indicate that his continued presence in the campus community involves no serious danger, it may become constitutionally necessary to reveal more fully the source and nature of the contradictory information which has been received by the university about his part in the incident, and even, if practical, to provide the accused student with an opportunity to confront one or more of his accusers.

It appears to be agreed, and I find for the purpose of this motion, that at the December 16 meeting with the defendant Carter, each of the plaintiffs was advised that President Carter had certain information that each plaintiff had been involved in an incident at the Phi Chi Epsilon fraternity house on December 16 in which there was destruction of property and on which occasion shots were fired, and each was asked whether there was anything he wished to say as to why he should not be suspended. The plaintiffs declined to respond except through their counsel. Their counsel then stated on behalf of each of them that his client denied each and every material allegation of the charge. They were asked certain specific questions by their own counsel, and made answers. Several denied having fired the shots. The affidavits do not reveal whether any of the plaintiffs specifically denied having been present among the invading group. At the hearing on the motion in this court, counsel for the plaintiffs was unable to recall whether he had asked any of the plaintiffs whether he had been present in the fraternity house on the morning of December 16. Two students who had been summoned to the December 16 meeting, and who are not among the plaintiffs in this action, explained that they were not members of the invading group; all charges against them have been dropped.

The suspended plaintiffs appear to contend that procedural due process was violated in one or more of the following respects: no written notices of hearing were served on the plaintiffs prior to the December 16 hearing; the plaintiffs and their counsel had insufficient time for consultation prior to the hearing; no ground rules for the hearing were ever explained to the plaintiffs or their counsel; a requested adjournment of the hearing was denied; defendant Carter and his counsel declined to respond to repeated requests that the plaintiffs be told what the "certain information" about their participation was, or to repeated requests for an explanation of why the plaintiffs' continued presence on the campus would present a clear and imminent danger to other students on the campus; defendant Carter ignored plaintiffs' statements at the December 16 meeting that, if not

**1250**

suspended, they would abide by all rules and regulations; no evidence was presented at the meeting on the subject of plaintiffs' participation in the fraternity house incident; despite plaintiffs' request that the meeting be recorded, no court reporter was present (plaintiffs' counsel was permitted to, and did, use a tape recorder); no evidence was presented with respect to whether plaintiffs' continued presence on the campus constituted a danger; plaintiffs were not informed at the meeting, or prior thereto, of their right to procure legal or other counsel at the charging stage of the proceedings; plaintiffs were not informed of their right not to divulge any information which might be used against them or against other students; plaintiffs were not given a reasonable time, at the meeting, to read "The Student Code and Disciplinary Procedures"; at the meeting, or prior thereto, plaintiffs were not given a "legal counsel election form" in order for them to indicate in writing whether they desired legal counsel; and at the meeting the burden was placed upon the plaintiffs to prove their innocence with respect to the fraternity house incident and to prove that their continued presence on the campus did not constitute a danger.

For reasons explained above, I consider that, with one possible exception, these criticisms of the notice and hearing are without merit. The single possible exception is the question whether defendant Carter and his counsel might reasonably have been required to furnish the plaintiffs, upon their request, with a more full statement of the nature and source of the information upon which the charges were based.

The course which the plaintiffs and their counsel followed at the preliminary hearing appears to have fallen somewhere between the extreme alternatives. When given the opportunity to respond to the accusation, they elected neither to remain silent nor to make a candid and full statement. They elected, instead, to enter a formal denial through their counsel and to respond only to careful questioning by their counsel. I have before me no record of the preliminary hearing before defendant Carter. However, the suspended plaintiffs make no contention here that any of them specifically stated that he was not among the group which invaded the fraternity house, nor that any of them offered any explanation or excuse for his presence there, except that some of them denied having fired the shots from the gun.

I conclude that the manner of response elected by the plaintiffs was not sufficient to require, as a matter of constitutional due process, that the defendant Carter or his counsel furnish the plaintiffs, at that time and place, with a more detailed description of the nature and source of the information upon which the charges were based.

The full hearings in the plaintiffs' disciplinary cases were scheduled with reasonable promptness, and they are now in progress.

For the reasons stated herein, and upon the basis of the entire record herein, the plaintiffs' motion for a temporary order

restraining the defendants from continuing the temporary suspension of the plaintiffs,

restraining the defendants from refusing to reinstate the plaintiffs,

restraining the defendants from refusing to expunge from the plaintiffs' records any notation of the temporary suspensions, and

restraining the defendants in the future from carrying out similar temporary suspensions,

is hereby denied.