**BLACK STUDENTS OF NORTH FORT MYERS JR.-SR. HIGH SCHOOL ex rel. Mattie SHOEMAKER, by her parent Veronica Shoemaker, Luther Young, Jr. by his parent Ida Young, Beverly Felton, by her parent, Juanita Felton, Lillie Boston, by her parent Carrie Lee Boston, Lorenda Jenkins, by her parent Lillian Jenkins, Jimmie Lee Williams, by his parent Jimmie Lee Williams, Sr., Ronald L. Swain, by his parent Loretha Griffin, Flora McCray, by her parent Chester Harley, Rudolph Brown, by his parent Mary L. Jones, Roosevelt Dorris, Louis Silbert, Plaintiffs,**

v.

**Ray L. WILLIAMS, Superintendent of the Lee County School Board of Public Instruction, Joseph A. Beavo, Principal, North Fort Myers High School, Gilbert Moore, Dr. Robert Anderson, Morton Goldberg, Rayma Page, Sidney Parnell, Members of Lee County School Board, Defendants.**

**State Board of Education of the State of Florida, Intervenor.**

**No. 70-4 Civ. Ft. M.**

United States District Court, M. D. Florida, Tampa Division.

Sept. 29, 1970.

Spencer L. Smith, Homestead, Fla., John Platt, Ft. Myers, Fla., for plaintiffs.

Emmet B. Anderson, Fort Myers, Fla., for defendants.

Stephen Marc Slepin, Tallahassee, Fla., for intervenor.

## SUMMARY JUDGMENT

KRENTZMAN, District Judge.

This is a class action pursuant to Rule 23(a), (b) (2), F.R.Civ.P., the class consisting of all black high school students enrolled at North Fort Myers Junior-Senior High School who were suspended by defendants on February 12, 1970. The Court has jurisdiction under the terms of 28 U.S.C. § 1343.

The complaint seeks injunctive relief as authorized by 42 U.S.C. § 1983 to restrain the enforcement of a policy established by defendants which is alleged to call for the automatic suspension of students who seek to redress their grievances by means of peaceful, orderly demonstrations or walkouts.

Plaintiffs claim that their suspensions were in violation of the United States Constitution because (a) they were suspended without a hearing, in violation of the Due Process Clause of the Fourteenth Amendment, and (b) they were suspended for exercising their First Amendment rights.

A hearing on plaintiffs' motion for summary judgment was held on June 17, 1970. The Court concludes that there is no genuine issue as to any material fact with regard to the due process claim, and that therefore plaintiffs are entitled to judgment as a matter of law. Rule 56, F.R.Civ.P. Discussion of the First Amendment claim is thus unnecessary.

## THE FACTS

On December 5, 1968, the defendant school board met and adopted a policy of automatically suspending students who participated in demonstrations or

walkouts. The official minutes of the board read as follows:

"Superintendent Williams reported incidents occurring at two of the secondary schools.

The Cypress Lake Junior-Senior High School received a crank phone call this morning that a bomb was in the school. This was handled by school and sheriff authorities.

The second incident was at the North Fort Myers Junior-Senior High School where approximately 80 students walked out of the school protesting the suspension of a student who refused, after many requests by the school administration to cut his hair.

The Board supported the administrative procedure followed and re-emphasized the power of the principal to suspend students involved in this type of demonstration.

The Board stated that any student who participated in a student walkout or demonstration against school rules or discipline should receive an automatic suspension."

On February 12, 1970 over 100 black students at North Fort Myers Junior-Senior High School staged a walkout to voice their grievances. The parties disagree as to the nature of the grievances and their merit; nor can they agree whether the walkout was peaceful, although the minutes of the school board quoted below state that the "group was orderly and well-behaved."

On the evening of February 12, 1970, the defendant school board and defendant superintendent met in a special meeting to consider the walkout. It was decided that the protesting students would be suspended for 10 days; however, after one week they would be permitted to return to school if they appeared accompanied by their parents.

"Chairman Moore stated that although this meeting was called for the purpose of resolving the Middle School matter, the Superintendent has a report of something that happened at one of the schools today.

Superintendent Williams reported the walk-out of approximately one hundred (100) students at the North Fort Myers Junior-Senior High School. The group was orderly and well-behaved. They were met by deputies who kept the roads clear as they marched from the school, down Pondella Road, across the Edison Bridge toward the Dunbar Recreation Center.

Reverend J. L. Stephens of the St. Johns Baptist Church asked the students to go to the Church, where he talked to them. Superintendent Williams also went to the Church and listened to the conversation. The students were dissatisfied with the celebration of Negro History Week, feeling they should have been allowed more time and publicity for their programs.

When questioned, the Superintendent informed the students he was surprised they had walked out, that if they had any problems a committee should have come to his office to see him.

Superintendent Williams informed the Board one boy seemed to be the chief instigator, also it was reported that a couple of adults were involved who should have known better. He told the students that no immediate changes of any kind are planned, that when the Civics programs are worked up for next year Negro History can be included in the curriculum, not as a special program but as part of the regular program.

A committee of students is meeting tonight with some adults to formulate what they would like to have and this will be reported later.

Superintendent Williams stated the School Board Policy calls for automatic suspensions of students who walk out. The length of time and terms of return will be worked out

tonight by the Administration and this information will be given to the news media so the parents can be informed.

\* \* \* \* \* \*

Motion by Mr. Parnell and seconded by Dr. Anderson that in consideration of the walk-out, that all those students who were involved in the walk-out shall be suspended until the morning of the 19th of February, after which time prior till the 10 days the parents may attend with them for readmission to their school and those who are judged to be guilty of inciting the walk-out shall serve no less than the ten (10) days suspension.

Mrs. Page remarked that in voting on this Motion, she hopes we will remember as a Board that no matter what school has a walk-out or demonstration such as this we are setting a precedent.

Mr. Parnell stated it is safe to say at this point the Board is more lenient in an effort to have some understanding and tolerance of these actions and it can be said we can expect to become more severe in time to come.

Mr. Parnell then said the above is his own personal feelings, however, other members of the Board endorsed the statement."

On the following day, February 13, 1970, the defendant Beavo, Principal of North Fort Myers Junior-Senior High School, sent the following letter to the parents of the students who had participated in the walkout:

"To the parent or guardian of _____.

At the direction of the Lee County Board of Public Instruction, I am writing you this letter to enforce the policy enunciated by the board at their meeting of the evening of February 12, 1970, as follows:

That all students who were involved in the walkout at North Fort Myers High School on February 12, 1970, be suspended from school for a period of ten (10) days. Any student who appears at the school with his parent or guardian on Monday, Tuesday, Wednesday, Thursday, or Wednesday evening between 7:00 P.M. may be readmitted to the school on Thursday morning, February 19, by the principal.

Therefore, your son/daughter is so suspended.

In the case of a bonafide illness and upon your appearance at the school with your child, readmission will be considered.

Very truly yours,
Joe A. Beavo, Principal."

The parties cannot agree who actually suspended the plaintiffs. According to plaintiffs, it was the school board. Defendants claim that the suspension action was not taken by the school board but by the principal in accordance with policy established by the board. There is no dispute, however, over the fact that the students suspended were not, prior to their suspension, offered a hearing at which they were apprised of the charge against them and given an opportunity to defend themselves. It is not contended by defendants that the suspensions resulted from substantial evidence introduced at an adversary hearing.

Despite this record, defendants contend that summary judgment is inappropriate for two reasons; first, because there are contested facts concerning the nature of the misconduct, and second, because there is a factual dispute as to whether the principal who suspended the students in fact observed them commit the misconduct. The Court holds that neither of these contested facts are material to plaintiffs' motion for summary judgment.

■ The nature of the walk-out—whether it was nonviolent or tumultuous—is irrelevant to the due process issue, although it would be relevant to the First Amendment issue. Whether the students walked out peaceably or riotously, they were still entitled by due process to a hearing. Due process protects

the orderly and the disorderly, even as it protects the innocent and the guilty.[1]

■ To hold that these plaintiffs are not entitled to a hearing because the person who suspended them saw them engage in the misconduct for which they were suspended is to miss the entire point of procedural due process. Due process requires that an accused be offered an opportunity to have his guilt determined in a fair hearing prior to the imposition of penalties for the alleged misconduct. The students here had a right to have their guilt determined prior to their suspension;[2] it is a futile gesture to attempt to show now, after the suspension, that they were in fact guilty. They had the right to have this point adjudicated prior to their suspension. In claiming that the principal, Mr. Beavo, saw the students engage in the misconduct for which they were suspended, defendants are asking this Court to litigate the guilt or innocence of the plaintiffs. This is not an issue. The question is not whether the plaintiffs are guilty of the conduct for which they were punished, but whether they were punished in accordance with the standard of justice embodied in the Constitution—in short, whether they were punished before they were legally determined guilty. Even if they were guilty, this will not affect the fact that their guilt was not adversarily determined prior to the time of punishment. Assuming, therefore, that the principal did see plaintiffs engage in misconduct, plaintiffs are not barred from a summary judgment.

## THE LAW

■ The Court begins its discussion of the law by making reference to several basic legal propositions. First, school boards are subject to the restraint of the Fourteenth Amendment.

"The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted. These have, of course, important, delicate and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights. That they are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes." West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943).

■ Second, young people, as well as adults, are protected by the Bill of Rights. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Third, students possess certain constitutional rights which may not be infringed.

"In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect. In our system, students may not be regarded as closed-circuit recipients of only that which the State chooses to communicate. They may not be confined to the expression of those sentiments that are officially approved. In the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views." Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969).

1. As stated below, due process entitles a student to a hearing prior to suspension only if the suspension is for a substantial period of time.

2. See note 1 *supra.*

■ Since 1961 it has been the law in this Circuit that "due process requires notice and some opportunity for hearing before students at a tax-supported college are expelled for misconduct." Dixon v. Alabama State Board of Education, 294 F.2d 150 (5 Cir. 1961). The Dixon rule, followed in every Circuit which has dealt with the problem, has been expanded to cases of suspension of college students, Stricklin v. Regents of University of Wisconsin, 297 F.Supp. 416 (W.D. Wis.1969); French v. Bashful, 303 F. Supp. 1333 (E.D.La.1969), and suspension and expulsion of high school students, Woods v. Wright, 334 F.2d 369 (5 Cir. 1964); Sullivan v. Houston Independent School District, 307 F.Supp. 1328 (S.D.Tex.1969).

The Court concludes that due process prevents defendants from suspending a student for a substantial period of time without first affording the student an adversary hearing. A suspension for ten days is a suspension for a substantial period of time.

The Court also concludes that plaintiffs have suffered irreparable harm by virtue of being suspended without a hearing. See Soglin v. Kauffman, 295 F.Supp. 978 (W.D.Wis.1968).

It is, therefore,

Ordered, adjudged and decreed:

1. Plaintiffs' motion for summary judgment is granted, and judgment is entered for plaintiffs.

2. Defendants are directed to expunge forthwith from school records and from the individual records of students all entries relating to the suspension of plaintiffs as a result of the walkout on February 12, 1970.

3. Defendants are permanently enjoined from suspending plaintiffs for a substantial period of time without following these standards of due process prior to the suspension: (1) Written notice of the charges against a student must be provided to the student and his parents or guardian; (2) The student must be offered a hearing affording both sides ample opportunity to present their cases. (3) Imposition of sanctions shall only be on the basis of substantial evidence.