Tyrone WILLIAMS, by his next friend, James Ingraham, for himself and all others similarly situated, et al., Plaintiffs-Appellants,

v.

The DADE COUNTY SCHOOL BOARD, Defendant-Appellee.

No. 30249.

United States Court of Appeals, Fifth Circuit.

April 5, 1971.

C. Michael Abbott, Ann Arbor, Mich., Bruce S. Rogow, Miami, Fla., for plaintiffs-appellants.

George Bolles, James T. Schoenbrod, Miami, Fla., Bolles, Goodwin, Ryskamp & Ware, Miami, Fla., for defendant-appellee.

Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

Appellant, a minor, brought this § 1983 suit for himself and all those similarly situated through his father, for declaratory judgment and a permanent injunction declaring that a part of Regulation 5114 of the Dade County, Florida Board of Education was violative of the due process clause of the Fourteenth Amendment. The part challenged is the section which authorizes the Superintendent of Schools to give a 30-day suspension, in addition to the principal's 10-day suspension, without benefit of a hearing.[1] Because we feel that, as in

1. The part of Regulation 5114 that is being challenged states in pertinent part: Additional 30-day Suspension

Only the Superintendent of Schools has the authority to suspend a pupil from school for more than 10 days.

Dixon v. Alabama, 294 F.2d 150, (5th Cir. 1961), the "rudiments of an adversary hearing" should have been afforded, we reverse the decision of the trial court.

The facts reveal that appellant, Tyrone Williams, was a senior at Miami Killian Senior High School. He was charged with participating in a mob attack on Tuesday, May 5, 1970. On Friday, May 8, 1970, he was suspended for ten days by the principal pursuant to Regulation 5114. A suspension notice was mailed on that day to Williams' parents advising them in general terms of the disciplinary action taken and the reasons for it and inviting them to confer with the principal with respect to the matter. This letter also informed Williams' parents that a 30-day suspension following the 10-day suspension already imposed was being recommended.

On the following Monday, Williams' parents and several other persons acting on his behalf conferred with the principal. The nature of the acts that were allegedly committed were explained to them. Thereafter, a 30-day suspension letter signed by the Superintendent was sent to Williams' home. The letter

If more than a 10-day suspension is deemed necessary, the principal may request an additional 30-day suspension (total 40 school days). This request for an additional 30-day suspension shall be prepared in triplicate on Form 39: *Request for 30-day Suspension* and the original and one copy sent to the district office for the superintendent's study, concurrence, and signature. This request must include justification for the recommended action. If approved by the district superintendent, the original copy must be sent to the Supervisor of Attendance Services, Pupil Personnel Services Department, within a 3-day period of the initial 10-day suspension in order to have time to process the request before the expiration of the initial 10-day suspension. The district superintendent and the school principal shall each retain a carbon copy of the request. The principal has the responsibility to notify immediately the appropriate police department and the School Security Department at the time of the incident described in the request for the suspension, if this action is warranted.

stated that if they had any questions they should telephone the school authorities.

The trial court held that this "hearing" was enough to comply with the due process requirements of the Fourteenth Amendment. Moreover, appellees argue that appellant could have contested the truth or falsity of the charges against him at this informal hearing but did not do so. Thus, even if the hearing was not adequate, it was appellant's own fault.

We disagree with the trial court's decision and appellee's characterization of this hearing for it is obvious from the testimony of the principal himself that this informal meeting was called not to weigh objectively the facts and reach a fair decision, but to explain to the parents the decision that had already been reached.

Testimony of William A. Byrd, Jr., Principal of Miami Killian Senior High School:

By Mr. Abbott, Counsel for Plaintiffs-Appellants:

Q. Was there any type of hearing held prior to the time that you suspended Tyrone on Friday, May 8th?

At the time a pupil is recommended for a 30-day suspension by the principal and the district superintendent, they shall also recommend whether or not the pupil shall have the opportunity to attend a Center for Special Instruction during the suspension period. On approval of the 30-day suspension by the Superintendent of Schools, he shall notify the parent by certified mail of the suspension and the basis for the action taken. The Superintendent's letter shall state also if the pupil's attendance at a Center for Special Instruction is approved. Copies of this letter are forwarded to the district superintendent and the principal.

At this time the school shall file in the pupil's cumulative guidance record Form 39: *Request for 30-day Suspension* and a copy of the letter of the Superintendent of Schools to the parent. A brief narrative comment of the suspension should be noted in section 9 of the cumulative guidance record.

There shall be no evidence of the 30-day suspension posted on the pupil's permanent record except that which is reflected by the pupil's attendance record.

A. No—if you are referring to Tyrone in this case.

Q. Did you have any hearing prior to recommending him for a 30-day suspension?

A. No, sir.

Q. Prior to the time that this suit was instituted, did you have any plans to hold a hearing?

A. I had a meeting with his parents on Monday following the issuance of the suspension notice and the letter.

Q. Did you consider that a hearing?

A. Yes.

Q. Was there some attempt made at that time to determine his guilt or innocence?

A. The circumstances under which we had made this suspension was explained to the parents.

Q. Did they have a chance to rebut that and show that he was not involved?

A. They stated that they did not feel—he did not feel it was true. Our security agent, Mr. McAllister, who brought to them the details of his investigation—

Q. No—did you hold that conference with the parents, specifically to find out whether these charges were true or false?

A. I held the conference with the parents to specifically explain to them why I had recommended a 30-day suspension.

Q. In other words, there was no chance coming out of the conference, that you would have changed your mind? You didn't call that so they could show you something to the contrary, is that correct?

A. That is true.

We cannot agree that such a hearing complies with the requirements of *Dixon, supra:*

██ We feel we must state, at the outset, that we are not dealing with the power of the school to discipline its students. Nor are we concerned with the guilt or innocence of appellant. We focus only on the school's procedure for the disposition of the case. Further, we note that though the record indicates there may have been considerable disruption in the school at the time appellant was first suspended (for ten days), we are concerned with the imposition of the *additional* 30-day suspension which was given without benefit of an effective hearing and at a later time.

The constitutionality of the section of Regulation 5114 which allows a 10-day suspension by the principal, without benefit of a hearing, was recently upheld by a three-judge court in this circuit in Banks v. Board of Public Instruction of Dade County, 314 F.Supp. 285 (S.D.Fla. 1970). The court felt that the need to act quickly and in a manner that could not further disrupt the educational process outweighed the student's interest in a prior hearing.

In the case at bar we have a much different situation. An additional 30-day suspension was added after tensions began to subside and a need for summary action could not be overriding. Further, though we feel that even a ten-day suspension is a serious penalty, *see, e. g.,* Black Students of North Ft. Myers, Jr.-Sr. High School, et al. v. Williams, et al., 317 F.Supp. 1211 (M.D.Fla.1970), the additional 30-day suspension, which brings the total to 40 school days or eight full weeks is a most serious punishment. It is more than a mere administrative device utilized to remove unruly students at a particularly tense time. Indeed, it is tantamount to the loss of a full term.

We realize, of course, that it is not necessary that students be given the kinds of procedural protections reserved for those accused of serious crime. Nevertheless, we feel that a penalty of this magnitude ought not be imposed without proper notice of the charges, and at least an attempt to ascertain accurately the facts involved and to give the student

an opportunity to present his side of the case.

Indeed, in an ever increasingly complex society, education plays an extremely significant role. As the Supreme Court said in Brown v. Board of Education of Topeka, Shawnee County, Kansas, 347 U.S. 483, 493, 74 S.Ct. 686, 690, 98 L.Ed. 873 (1954):

> Today education is perhaps the most important function of state and local governments. * * * It is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education.

Similarly, this court, in *Dixon* stated:

> It requires no argument to demonstrate that education is vital and, indeed, basic to civilized society. Without sufficient education the plaintiffs would not be able to earn an adequate livelihood, to enjoy life to the fullest, or to fulfill as completely as possible the duties and responsibilities of good citizens. *Id.* 294 F.2d at 157.

Though *Dixon* dealt with the expulsion of college students, we feel that to deprive even a high school student, "in these days", of 40 school days may indeed cause serious harm. Thus, as the court stated in *Banks:*

> Dixon v. Alabama State Board of Education, *supra,* involving college students is of course persuasive and this court adopts that decision insofar as it requires that notice be given, a hearing provided for, and that the hearing include the rudimentary adversary

elements. Thus, the students should be given specific notice of the charges, the names of witnesses with a summary of their testimony, and should be given the opportunity to refute the charges by oral or written testimony. While, as stated above, the *Banks* court did not allow for this kind of a hearing prior to the ten-day suspension, we see no reason why these procedural safeguards ought not be required before adding an additional 30 days.

■ Appellees raise one other point. They argue that appellant failed to exhaust his administrative remedies. As appellant points out, however, this overlooks the clear language of the then operative Board Regulation 5114 which intimates no right or privilege of appeal.[2] The fact that a letter informing appellant's parents of the 30-day additional suspension stated they could call school authorities if they had any questions hardly seems to rise to the level of even an informal administrative procedure. This is particularly true in light of the fact that the "hearing" that was provided was explanatory in nature and not aimed at ascertaining and weighing the facts. The notice did not purport to give the pupil or his parents an opportunity for "rudimentary adversary elements", *Dixon, supra.* Nor were they "given specific notice of the charges, the names of witnesses with a summary of their testimony" nor were they "given the opportunity to refute the charges by oral or written testimony". *Banks, supra,* and see Dixon v. Alabama State Board of Education *supra,* 294 F.2d 150, 158, 159.

The trial court's judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

**2.** A revised regulation has since been enacted, but it is not before this court.