## Oravetz v. West Allegheny School District

*Frank J. Kernan*, for plaintiffs.
*John Regis Valaw*, for defendants.

FINKELHOR, *J.*, May 23, 1975—Plaintiffs Andrew W. Oravetz, Doris L. Oravetz, and Debora Ann Oravetz have requested equitable relief[1] to reinstate minor plaintiff Debora Oravetz into the West Allegheny School District and to enjoin the school district from excluding minor plaintiff.

The findings of fact[2] are as follows:

1. Plaintiffs Andrew M. Oravetz and Doris L. Oravetz are the parents and natural guardians of Debora Ann Oravetz, a minor 17 years of age and a student at West Allegheny Senior High School.

2. On May 2, 1975, minor plaintiff was temporarily suspended from school at the West Allegheny Senior High School.

3. On May 7, 1975, a hearing was conducted be-

----

1. Presumably because of the need for speed in proceeding with this case, plaintiff's request for relief is not clearly stated in the complaint.

2. The testimony has not been transcribed and the findings of fact are based on the bench notes of the chancellor.

fore the School Board of West Allegheny School District and, following said hearing, on May 8th minor plaintiff was excluded from school until June 2, 1975, but permitted to take examinations in the various courses during the final week of school. Notice of exclusion was by letter without findings or specific reasons for suspension.[3] (Plaintiff's Exhibit 6.)

4. Minor plaintiff was investigated due to allegations of another student (unidentified) relating to the sale of so-called "speed" pills and minor plaintiff was called to the vice-principal's office for investigation.

5. During said investigation, mother plaintiff and minor plaintiff agreed to the search of minor plaintiff's purse, in which two cigarettes were found.

6. These cigarettes were never tested, but it is alleged by the school administrator that they were marijuana cigarettes.

7. The unidentified pills were subsequently described as "diet pills" and were not found on Debora's person or purse, and it is Debora's allegation that said pills were purchased on behalf of another student. Specific content of these pills was never clearly established by defendant.

8. At no time prior to the hearing which led to the suspension did the directors of the school district specifically define offenses which would lead to suspension or exclusion from school.

9. At the hearing which was conducted by the school board which led to the suspension (Plain-

---

3. During the court hearing there was some disagreement as to whether the exclusion was based solely on the possession of two alleged marijuana cigarettes or also for the purchase of the "pills".

tiff's Exhibit 5), the vice-principal related his findings and minor plaintiff was informally asked various questions by members of the board relating to her involvement with the pill sales and the use of marijuana in the schools. The various other students who had involved Debby in the incident were not present and did not testify.

10. Minor plaintiff was not represented by counsel and, in fact, father plaintiff was advised by the vice-principal that, in view of her record, it was doubtful that counsel would be required.

11. Minor plaintiff is a good student, and has not been in previous school difficulties.

12. After the close of the hearing with plaintiffs excluded, minor plaintiff's record was examined by the board and a decision was reached to exclude minor plaintiff from school until June 2, 1975.

Plaintiffs filed a complaint in equity requesting immediate relief and a hearing was held before this court on May 15, 1975. Briefs were submitted by counsel.

The basic position of plaintiffs, based upon the above facts, is that defendant school district failed to follow the mandated procedures of Chapter 12 of the Administrative Code titled Students Rights and Responsibilities: 22 Pa. Code §12.1, et seq., as promulgated by the State Board of Education, and that plaintiff's dismissal was therefore in violation of these provisions as well as the due process requirements of the Federal and State Constitutions. Specifically, plaintiffs argue that Chapter 12 requires the definition of offenses that would lead to exclusion from school. It is plaintiff's further position that minor plaintiff will suffer irreparable harm by absence from school and that there is no adequate relief at law.

It is defendant's posture that the provisions of Chapter 12, Students Rights and Responsibilities, are not binding upon the individual school districts unless specifically adopted and that the administrative procedure satisfied constitutional prerequisites. Defendant further argues that where the offense is an alleged violation of criminal law, the definition of the offense by the school board is irrelevant.

While the issues have been joined by the parties on the applicability of the Pennsylvania Student Bill of Rights and Responsibilities, the threshhold question must be whether equity has jurisdiction even though this issue was not raised by the parties.

Section 1318 of the Public School Code, as amended by the Act of January 14, 1970, P.L. 468, 24 P.S. §13-1318 (1969), provides that a principal or teacher in charge of a public school may temporarily suspend any pupil, and the board may, after a proper hearing, order a permanent suspension. While this section of the code does not include provision for judicial review, section 9, Art. 5 of the Pennsylvania Constitution provides a right of appeal from an administrative agency to a court of record: McDonald v. Penn Hills Township School Board, 7 Pa. Commonwealth Ct. 339, 298 A. 2d 612 (1972). In other cases involving adjudication by school districts, appeals have been taken under the Local Agency Law of December 2, 1968, P.L. 1133, 53 P.S. §§11302, et seq.

While the court does not believe that appeal from school disciplinary action should bypass the local agency law any more than teacher dismissals or similar local agency action,[4] deprivation of educa-

---

4. After an examination of the existing cases on pupil expulsion, the court notes that equity has taken jurisdiction:

tional rights can produce irreparable harm and establishes a need for prompt and immediate relief. For these reasons, the Court will take jurisdiction in order not to further delay a resolution of these proceedings.

As stated, the Act of January 14, 1970, P.L. (1969) 468, 24 P.S. §13-1318, provides for the suspension and expulsion of pupils as follows:

"Every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedience or misconduct, and any principal or teacher suspending any pupil shall promptly notify the district superintendent or secretary of the board of school directors. The board may, after a proper hearing, suspend such child for such time as it may determine, or may permanently expel him. Such hearings, suspension, or expulsion may be delegated to a duly authorized committee of the board. March 10, 1949, P.L. 30, art. XIII, sec. 1318."

The legislature did not provide any specific procedure for the implementation of this section.

On September 13, 1974, the Department of Education and the State Board of Education adopted as State policy a code of students rights and responsibilities: 22 Pa. Code 12. The promulgation of these regulations began late in 1971 and was completed in 1974 after numerous hearings and revisions. Notice of the proposed rulemaking was published pursuant to the required procedures, and these regulations became operative in October, 1974, after approval by the Department of Justice.

---

Scott v. Trinity Area School District, 53 D. & C. 2d 488 (1971); Geiger v. Milford School District, 51 D. & C. 647 (1944). In our judgment, more appropriate relief would be an appeal under the local agency law with a petition for supersedeas.

These regulations, frequently referred to as the Student's Bill of Rights, include the basic proposition "that all persons residing in the Commonwealth between the ages of six and 21 years are entitled to a free and full education." (Rule 12.1.) The regulations further provide in section 12.6 procedure for the exclusion of any student from the educational institution and state that: "The board of school directors *shall* define and publish the types of offenses that would lead to exclusion from school." (Emphasis added.) Section 12.6 further defines exclusions as: 1) temporary suspension; 2) full suspension; or 3) expulsion. Temporary suspension is exclusion for a period up to *three* school days by the principal *without* a hearing. Full suspension is exclusion for a period of up to *ten* school days after an *informal hearing* before the principal. Expulsion is defined as exclusion for an offense for a period exceeding 10 school days and requires a formal hearing, which is further defined in section 12.8.

Before an expulsion—i.e., all suspensions over 10 days—may become effective, the hearing must be held before the Board of School Directors or a duly authorized committee of the board, and must include: 1) notification of charges in writing sent to the parents or guardian by certified mail and to the student; 2) sufficient notice of the time and place of hearing; 3) the right to an impartial tribunal; 4) the right to be represented by counsel; 5) the right to be presented with the names of adverse witnesses and copies of the statements and affidavits of those witnesses; 6) the right to demand that witnesses appear in person and answer questions or be cross-examined; 7) the right to testify and produce witnesses; and 8) a record of the proceeding either by stenographer or tape recorder.

Since minor plaintiff in this case was excluded from school for a period longer than 10 days, the procedure used by the West Allegheny School District did not meet the regulations of the State Board of Education.

The State Board of Education derives its powers from the Administrative Code of June 7, 1963, as amended, 71 P.S. §118.1, 367, 368, 369. While there is no specific delegation of authority to draft procedural rules relating to exclusions from the educational institutions of the Commonwealth, the State Board or its subordinate councils may formulate policy dealing with "admission, attendance, graduation and other separation requirements.": 71 P.S. §369.

An examination of the regulations promulgated by the State Board demonstrates that the board did not take it upon itself to define the types of offenses leading to exclusion, and left that matter to the individual school districts, but the regulations do establish a basic policy for the procedure of exclusion and implementation of section 1318 of the School Code, supra.

However, it is not necessary for this court to determine whether the so-called Student Bill of Rights promulgated by the State Board of Education was self-executing or whether it required specific adoption by the school district. The procedure for disciplinary action—i.e., exclusion from school by suspension or expulsion—in fact, restates procedures that have been reiterated by Federal courts in numerous cases: Dixon v. Alabama State Board of Education, 294 F. 2d 150 (CA5 1961), cert. denied 368 U.S. 930 (1961); Hagopian v. Knowlton, 470 F. 2d 201 (CA2 1972); Pervis v. LaMargue Independent School District, 466 F. 2d

1054 (CA5 1972); Williams v. Dade County School Board, 441 F. 2d 299 (CA5 1971).

As summarized by the United States Supreme Court in Goss v. Lopez, 43 L. W. 4181, 4184 (January 22, 1975):

"The authority possessed by the State to prescribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistently with constitutional safeguards. Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause."

That court found that even a ten-day suspension is a serious and possibly traumatic event in the life of the suspended child or adolescent and that the excluded student is entitled to constitutional protections. At the very minimum, students facing suspension, even of a temporary or limited nature, "must be given *some* kind of notice and afforded *some* kind of hearing.": 43 L. W. 4181, 4185.

Our own State courts as early as 1887, long before the current concern for juvenile justice, ruled that where a student is to have a school hearing on a charge of misconduct he [she] must have notification which is ". . . so fully, plainly and substantially described, that he [she] might clearly apprehend it, realize its gravity and the possible harm which might come to him [her], if it were sustained . . . He [she] was entitled to know what testimony had been given against him [her] and by whom it had been delivered, and that the proofs be made openly and in his presence, with a full opportunity to question

the witnesses and to call others to explain or contradict their testimony.": Commonwealth ex rel. Hill v. McCauley, 3 Pa. C. C. 77 (1887). See also Scott v. Trinity Area School District, 53 D. & C. 2d 488 (Washington Co. 1971); Geiger v. Milford School District, 51 D. & C. 647 (Pike Co. 1944).

In the instant proceeding before this court, student plaintiff was "excluded" from school for a period of approximately 30 days (as compared to 10 days in Goss v. Lopez, supra.[5]) Based upon the testimony, an informal investigative hearing or meeting was held in the office of the vice principal to determine the student's involvement in the alleged sale of unidentified pills in the school. At this time, the two cigarettes were discovered and minor plaintiff temporarily suspended.

While exclusion of a student is *not* a criminal trial, nonetheless it is an adversary proceeding. The student's good name, reputation, and even future career may be at stake.

In the instant proceeding, there was no testimony that minor plaintiff was a threat to the operation of the school system, requiring immediate suspension. At no time was there a clear statement of the alleged violation of school regulations, no written notice was sent to the plaintiffs, parent plaintiffs were discouraged from engaging counsel, no witnesses were present at the hearing other than plaintiffs, and there were no findings to support the exclusion of minor plaintiff.

While the issue before the court is procedural, in the entire record of the board hearing (Plaintiff's Exhibit 5) it was nowhere established that "the

5. While not in issue, it would appear to the court that the May 7th hearing would meet the requirements for an "informal hearing."

pills" that minor plaintiff was alleged to have purchased contained a dangerous drug substance nor that the two cigarettes that were found in her purse contained marijuana prohibited by law. One of the basic and fundamental reasons for a formal hearing and the procedure of cross-examination and the presentation of witnesses is to arrive at the truth.

A true hearing is more than a round table discussion on social problems by concerned citizens, but must utilize techniques that have been developed over the centuries to arrive at the truth or falsity of allegations. Absent notice of charges, it is not clear to the court whether minor plaintiff was suspended for possession of a dangerous drug, for the purchase of a dangerous drug, or for the purchase of what plaintiff thought was a dangerous drug, even though the item was of doubtful authenticity.

The court is sympathetic to the problems of school districts and school directors in maintaining discipline in schools within a changing and frequently violent society. Unquestionably, there are illegal activities which are occurring within the schools which threaten the educational process itself and interfere with the education of *all* students. However, the students' legitimate entitlement to public education is protected by the minimum procedures of due process as defined by the laws of this Commonwealth.

Based upon the above discussion, it is the opinion of the chancellor that minor plaintiff Debora Oravetz was not accorded due process of law required either by the regulations of the State Board of Education or the Federal and State Constitutions. An appropriate decree will therefore be issued.

## PRELIMINARY DECREE

And now, May 23, 1975, upon the petition of Andrew W. Oravetz, Doris Oravetz and Debora Ann Oravetz for equitable relief, it is hereby ordered, adjudged and decreed as follows:

1. the above case be remanded to the West Allegheny School District to hold a proper formal hearing in compliance with the Regulations of the State Board of Education and this opinion within 30 days;

2. minor plaintiff be reinstated as a student in West Allegheny Senior High School as of the date of this decree;

3. the official school record of said minor plaintiff shall be expunged of any record of suspension or expulsion in the absence of a hearing as set forth in paragraph 1 of this decree; and

4. the above decree shall become final in 30 days.