[L. A. No. 29354.   In Bank.   Apr. 19, 1967.]

P. S. O'REILLY, Plaintiff and Appellant, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF CALIFORNIA, Defendant and Respondent.

Kirtland & Packard, Richard L. Kirtland, Walter N. Anderson and Ellis J. Horvitz for Plaintiff and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Stephen H. Silver and Conrad Lee Klein, Deputy Attorneys General, for Defendant and Respondent.

TRAYNOR, C. J.—Plaintiff P. S. O'Reilly appeals from a judgment denying his petition for a writ of mandate to set aside an order of the Board of Medical Examiners.

On September 12, 1962, an accusation was filed with the Board of Osteopathic Examiners charging plaintiff with two violations of Business and Professions Code section 2392.[1] A hearing officer from the Office of Administrative Procedure held hearings on October 10 and December 20, 1962, and on March 11, 1963, filed a proposed decision finding cause for disciplinary action under section 2392. He recommended that plaintiff's license be revoked but that execution be stayed on the condition that plaintiff be placed on probation for five years and suspended from practice for 90 days. While the proceeding was pending plaintiff elected to become a licentiate of the Board of Medical Examiners (see Bus. & Prof. Code, § 2396) and that board renewed his physician's and surgeon's certificate on January 18, 1963. Thereafter, on January 22, 1964, the Board of Medical Examiners ratified the proceedings before the Board of Osteopathic Examiners and adopted the decision of the hearing officer.

Plaintiff then sought review of the board's order in the superior court. The court found that the proceedings of the medical board were within its jurisdiction, that the board's decision was supported by its findings, that the findings were supported by the weight of competent evidence, and that the penalty imposed was not an abuse of discretion. Accordingly, it denied relief.

---

[1] Section 2392 provides: "The employing, directly or indirectly, of any suspended or unlicensed practitioner in the practice of any system or mode of treating the sick or afflicted or the aiding or abetting of any unlicensed person to practice any system or mode of treating the sick or afflicted constitutes unprofessional conduct within the meaning of this chapter." All further statutory citations are to the Business and Professions Code unless otherwise specified.

We note at the outset that there is no merit in plaintiff's contention that he was denied due process when the medical board assessed the penalty against him on the basis of proceedings initiated before the osteopathic board. The matter was transferred to the Board of Medical Examiners after plaintiff had elected to cease being licensed by the osteopathic board and to become a licentiate of the medical board. ''[D]ue process is not interested in mere technical formalism. It is the substance that is determinative of whether due process has been afforded.'' (*Cooper* v. *State Board of Medical Examiners*, 35 Cal.2d 242, 245 [217 P.2d 630, 18 A.L.R.2d 593].) The medical board ratified the prior actions of the osteopathic board, which complied fully with the procedures set forth in Government Code sections 11503, 11505 and 11509.[2] Plaintiff was not injured by the transfer. To refile the accusation would have been an idle act, and to require the hearing officer to rehear the case would have been needlessly wasteful.

The first charge of unprofessional conduct concerned plaintiff's employment of Dr. Daniel Sanchez and Dr. Morimitsu Ohnishi, who were not licensed to practice medicine in California. Dr. Sanchez is a citizen of Mexico and received his medical degree there. Dr. Ohnishi is a citizen of Japan, where he received his medical degree and is a professor of medicine. Both doctors came to the United States under an exchange-visitor program, authorized by the United States Information and Educational Exchange Act of 1948, to serve as trainees in general and traumatic surgery. The Department of State had designated plaintiff's California Emergency Hospital as an exchange-visitor program to provide training in general and traumatic surgery for qualified foreign medical students and had appointed plaintiff as the responsible officer of the program. The parties stipulated that on August 21, 1959, plaintiff aided and abetted Dr. Ohnishi in giving anesthetics to a patient and aided and abetted Dr. Sanchez in assisting in surgery upon the patient. From the foregoing facts the board concluded that plaintiff violated section 2392 by employing and aiding and abetting Dr. Ohnishi and Dr. Sanchez in the unlicensed practice of medicine.

[2]Section 11503 requires the filing of an accusation specifying the statutes that have been violated and the facts that constitute the violation. Section 11505 requires that the respondent be served with the accusation and be notified of his rights to a hearing. Section 11509 requires notice to the respondent of the time and place of the hearing.

Plaintiff contends that the board cannot discipline him for these activities, since they were undertaken pursuant to the federal exchange-visitor program. He asserts that the supremacy clause of the United States Constitution (art. VI, cl. 2) precludes enforcement of the state licensing laws in this case, on the ground that such enforcement would interfere with the federal exchange program. We do not agree with plaintiff's contention.

█  Since a state law that is incompatible with federal law cannot be enforced (*United States* v. *Pink*, 315 U.S. 203, 230-232 [86 L.Ed. 796, 817-819, 62 S.Ct. 552]; *United States* v. *Belmont*, 301 U.S. 324, 331-332 [81 L.Ed. 1134, 1139-1140, 57 S.Ct. 758]), the controlling question is whether section 2392 is incompatible with the federal program.

The exchange-visitor program was established by the United States Information and Educational Exchange Act of 1948 (62 Stat. 6).[3] Congress declared its purpose to be "to promote a better understanding of the United States in other countries, and to increase mutual understanding between the people of the United States and the people of other countries" by, among other things, establishing an interchange of persons, knowledge and skill. (See 62 Stat. 6, § 2.) The Secretary of State was authorized to provide for the interchange between the United States and other countries of students, trainees, teachers, guest instructors, professors, and leaders in fields of specialized knowledge or skill. (See 62 Stat. 7, § 201.) The Secretary was directed to use "existing reputable agencies," preferably private rather than governmental, in setting up the program for foreign visitors. (See 62 Stat. 7, 14, §§ 201, 1005.) In addition he was empowered to prescribe and enforce the conditions under which the foreign visitors were to be admitted to this country. (See 62 Stat. 7, § 201.)

Pursuant to this delegation of authority, the Secretary established different classes of exchange-visitor programs, including programs sponsored by hospitals and related institutions. (See 22 C.F.R. § 63.3 (c)(1).) Under the regulations those who wish to sponsor a program must apply to the Secretary for approval, and in reviewing the application the Secretary considers professional organizations' appraisal of the quality of a particular program. (See 22 C.F.R. §§ 63.2(a),

---

[3]This statute was repealed by Public Law 87-256, § 111(a)(2), 75 Stat. 538 (1961) and the program was consolidated with other similar programs by Public Law 87-256, 75 Stat. 527-38 (1961), 22 U.S.C. §§ 2451-58 (1964).

█

63.3(a).) The Secretary also can revoke the approval for sufficient cause including failure to maintain educational standards established by competent professional agencies. (See 22 C.F.R. § 63.3(b).) Once approved, the sponsor has the primary responsibility for recruiting exchange visitors and must provide them with a form specifying the purpose, direction and condition of the visit. (See 22 C.F.R. § 63.4.) This form enables the visitor to obtain his visa from the American consul in his native country.

Dr. O'Reilly applied for approval as a sponsor of an exchange-visitor program and in support of his application filed letters from the American College of Osteopathic Surgeons and the American Osteopathic Association attesting to the nature and quality of his hospital program. The Secretary designated plaintiff as a sponsor of a program to provide training in general and traumatic surgery for qualified foreign medical students and a three-year course in clinical laboratory for qualified foreign students. Thereafter, plaintiff recruited Drs. Ohnishi and Sanchez to participate in his program as trainees in traumatic and reconstructive surgery with special emphasis in reconstruction of the hand and forearm.

There can be no question that to conduct the exchange program in compliance with the state medical regulation would frustrate to some extent the program's foreign policy objectives. Effective practical training in general and traumatic surgery requires some treatment of patients. (See §§ 2147, 2147.5, which authorize undergraduate and postgraduate medical students to perform medical functions in the course of their study.) Such treatment would be permissible if the foreign doctor were licensed in California (see § 2193) or if the program were conducted under the auspices of an approved medical school in compliance with the detailed requirements of sections 2147.5 and 2147.6. Either of these alternatives, however, would impose burdens on the foreign visitors that might be out of proportion to the benefits that they could expect to receive under the limited exchange programs contemplated under the federal statute. Either alternative would also expose the foreign visitor to rejection by the state board for various reasons. ▇ Although it thus appears that to comply with state law a foreign visitor must either refrain from practicing medicine or comply with burdensome state regulations, we do not believe that the federal statute supersedes state regulation.

The basic problem is one of accommodating the foreign pol-

icy objectives of the exchange programs with the interests of the patients who might be treated by the visiting doctors. Congress has the power to make this accommodation even though the power to regulate the practice of medicine is ordinarily committed to the states. (*Linder* v. *United States,* 268 U.S. 5, 18 [69 L.Ed. 819, 823, 45 S.Ct. 446, 39 A.L.R. 229]; cf. *Sperry* v. *Florida,* 373 U.S. 379, 385 [10 L.Ed.2d 428, 432, 433, 83 S.Ct. 1322].) It cannot be lightly assumed, however, that in establishing the exchange program, Congress intended to deprive patients of the protection of state regulation. Had it so intended, we are convinced that it would have provided an effective alternative to protect patients of visiting doctors. The federal program does not provide effective patient protection. A prospective sponsor need only secure summary recommendation from professional groups (see 22 C.F.R. § 633 (a)), and the selection of the visitors is controlled largely by the sponsors, not the federal authorities. Finally we note that our conclusion that state regulation is not superseded is supported by the only administrative interpretation we have been able to find.[4]

Plaintiff also contends that under state law the federal enactment is a statutory basis for an implied exception to the state regulations pursuant to which the visitors could lawfully perform medical acts. He invokes *Magit* v. *Board of Medical Examiners,* 57 Cal.2d 74 [17 Cal.Rptr. 488, 366 P.2d 816], in which we recognized that with a statutory basis for an exception, persons not licensed to practice medicine may perform some medical acts. The reasoning of the *Magit* case, however, was based on the interrelationship of the state licensing provisions applicable to doctors and nurses, and there is nothing in that case or in the legislative scheme to support an exception to the prohibition of unlicensed practice based on a federal rather than a state statute.

---

[4]"In approving any particular exchange program, I assume, as the responsible officer of the Department of State, that the sponsor will be aware of and comply with the applicable federal, state and local laws." (Letter from Culver E. Gidden, Chief, Facilitative Services Staff, Bureau of Educational and Cultural Affairs, Department of State, to Warren H. Deering, Deputy Attorney General, December 11, 1964.) Plaintiff contends that the word "applicable" in this letter begs the basic question, namely, what laws are applicable? Since the letter was written in response to an inquiry from the Attorney General about the applicability of state law to plaintiff's exchange program, we doubt that Mr. Gidden meant to avoid the inquiry by begging the question. We believe he meant that federal, state, and local laws that would ordinarily apply remained applicable to the sponsor of any exchange program.

The second charge of unprofessional conduct involves plaintiff's employment of William Thomas Duffy, who was a graduate of the California College of Medicine but was not licensed to practice medicine in California. Mrs. Beatrice Gowdy testified that Duffy diagnosed an injury to her knee and treated it on several occasions at plaintiff's hospital. On no occasion had plaintiff examined her or been present while she was being treated. Plaintiff testified, however, that he had examined Mrs. Gowdy on several of her visits and had made the diagnosis and that Duffy had consulted him before administering each treatment.

The board found that plaintiff employed Duffy and that Duffy practiced "a system of treatment in the diagnosis and treating of one Beatrice Gowdy." It further found that Duffy consulted with plaintiff before applying diathermy and other treatment and that plaintiff was not present during the treatments.

Plaintiff contends that the evidence and findings do not support the conclusion that he employed Duffy to practice medicine. There is, however, substantial evidence to the contrary. In administering the treatments to Mrs. Gowdy, Duffy performed medical functions and his consultations with plaintiff did not make his actions lawful. Although section 2665, subdivision (a), allows a full time assistant to administer physical therapy under a licensed person's "orders, directions and supervision," there is no evidence that plaintiff attempted to provide the supervision required by this section. In addition, Mrs. Gowdy testified that plaintiff had never seen her. These facts justify the conclusion that Duffy had diagnosed and treated Mrs. Gowdy and that he was employed to do so.

Finally, plaintiff contends that even if the charges are sustained by the evidence, the punishment is excessive. ■ Although good faith is not a defense (see *Magit* v. *Board of Medical Examiners, supra,* 57 Cal.2d 74), we believe that the uncertainty surrounding the question of federal pre-emption and plaintiff's apparent good faith in allowing the foreign doctors to assist him preclude any punishment greater than probation for the violation involving the exchange program. (See *Magit* v. *Board of Medical Examiners, supra; Harris* v. *Alcoholic Beverage etc. Appeals Board,* 62 Cal.2d 589, 594-595 [43 Cal.Rptr. 633, 400 P.2d 745] ; *Brown* v. *Gordon,* 240 Cal. App.2d 659, 666-667 [49 Cal.Rptr. 901] ; cf. *Hildebrand* v. *State Bar,* 36 Cal.2d 504, 514 [225 P.2d 508].)

Since a single penalty was imposed for both violations we have no way of knowing the extent to which the board relied upon the first violation in imposing the 90-day suspension. Accordingly, the case must be remanded to the board for reconsideration of the penalty assessed. (See *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242, 252 [217 P.2d 630, 18 A.L.R.2d 593]; *Garfield* v. *Board of Medical Examiners,* 99 Cal.App.2d 219, 231-232 [221 P.2d 705].)

The judgment is reversed, and the trial court is directed to enter judgment ordering respondent board to set aside its order of revocation and to reconsider the penalty in the light of this opinion.

Peters, J., Tobriner, J., Burke, J., Sullivan, J., and White, J.,* concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Kingsley in the opinion prepared by him for the Court of Appeal in *O'Reilly* v. *Board of Medical Examiners* (Cal.App.) 55 Cal.Rptr. 152.

Appellant's petition for a rehearing was denied May 17, 1967. White, J.,* sat in place of Mosk, J., who deemed himself disqualified. McComb, J., was of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.