[Civ. No. 28005. First Dist., Div. One. Sept. 20, 1971.]

CHARLES S., a Minor, etc., et al., Plaintiffs and Appellants, .v. BOARD OF EDUCATION et al., Defendants and Respondents.

**COUNSEL**

Barbara Kass, Kenneth Hecht, Michael S. Sorgen and Armando M. Menocal III for Plaintiffs and Appellants.

Thomas M. O'Connor, City Attorney, Raymond D. Williamson, Jr., Deputy City Attorney, and Irving G. Breyer, for Defendants and Respondents.

**OPINION**

**ELKINGTON, J.**—The primary question on this appeal is whether Education Code section 10607[1] (third paragraph), prescribing the procedure on suspension of a public school student, comports with state and federal constitutional requirements of due process of law.

A petition for writ of mandate was filed in the superior court on behalf of Charles S., a minor (whose full name for reasons which will become obvious is omitted), and all other persons similarly situated, including eight others expressly named. Each of the nine persons had been suspended from high school pending disposition of juvenile court proceedings against him.

The petitioners sought a court order: (1) terminating their suspensions pending a "full due process hearing," (2) that the school record of their illegal suspensions be expunged of "harmful notations," and (3) that addi-

---

[1]Education Code section 10607 provides: "No pupil shall be suspended from an elementary school for more than two consecutive weeks.

"No pupil shall be suspended from a secondary school for more than the duration of the current semester. For secondary schools not operated on the basis of a school term regularly divided into semesters, the governing board shall select a date approximating the midpoint of the term for purposes of the preceding sentence. All summer school sessions maintained at a secondary school shall, for purposes of this paragraph, be deemed to constitute a single semester.

"On or before the third consecutive school day of any given period of suspension, the parent or guardian of the pupil involved shall be asked to attend a meeting with school officials, at which time the causes, the duration, the school policy involved, and other matters pertinent to the suspension, shall be discussed. If the parent or guardian fails to join in such a conference, the school officials shall send him by mail a letter stating the fact that suspension has been implemented and setting forth all other data pertinent to the action."

tional educational programs be provided them "so that they can regain the valuable schooling missed as a result of the illegal disciplinary action."

They further sought a declaration of the superior court that "Section 10607 of the California Education Code requires a due process hearing within three days after the commencement of any school suspension from a California public school, or in the alternative that such statute is unconstitutional for not providing the nature of hearing required by due process, and further that this Court declare for the parties to this controversy what nature of hearing due process requires within three days of a suspension from a public high school." It is the trial court's refusal to so declare upon which petitioners' principal contention on this appeal is based.

■ The appeal is taken from the superior court's "Order Denying Petition for Writ of Mandamus." Such an order is appealable; see *Daggs* v. *Personnel Commission,* 1 Cal.App.3d 925, 930 [82 Cal.Rptr. 157].

The case was tried on declarations of witnesses from which the following facts could have been, and presumably were, found to be true by the trial court.

The primary petitioner, 17 years old, and a California Youth Authority parolee, and the other eight named persons, 14 to 17 years of age, were students of a San Francisco high school. During the month of September 1969, serious disturbances occurred at and around the school. At the time the nine juveniles were arrested for offenses ranging through kidnaping, rape, assault upon a police officer, assault with a bumper jack, assault resulting in the death of a boy whose head struck a sidewalk curb, carrying a concealed weapon, and disturbing the peace. The alleged offenses appear to have occurred at times when the students should have been in class. Juvenile court proceedings were instituted in each case. At about the same time each of the nine students was suspended from school for the reasons which brought about the juvenile court proceedings; these are the suspensions which are the basis of the instant action and appeal.

Although the evidence is to some extent in conflict, a serious doubt arises therefrom as to the fidelity with which the school authorities followed the requirements of the third paragraph of section 10607 relating to "meetings" with the parents or guardians of the suspended students. Petitioners, however, appear to make no real complaint over any such deficiency; they emphasize that the issue before us "is one of law, not of fact."

Before proceeding further it seems proper to dispose of petitioners' repeated and insistent claims that they were "indefinitely suspended." Such, if it were true, would be tantamount to expulsion from school—a denial of one's right to an education. (See *Madera* v. *Board of Education of City of*

*New York,* 386 F.2d 778, 784; *Knight* v. *State Board of Education,* 200 F.Supp. 174, 178.) Obviously the demands of due process upon an expulsion must be stricter than upon a reasonably limited suspension. Indeed, in a case of expulsion section 10608[2] calls for a "hearing" and "decision" with the implied due process connotations of those terms.

But such claims of indefinite suspension are wholly without support in the record. Furthermore, at the oral argument on this appeal it was conceded that each suspension terminated no later than the related decision of the juvenile court. Such terminations were in full compliance with Education Code section 10607.5 authorizing extension of a suspension "until such time as the juvenile court . . . has rendered a decision in the action."

And we observe that the Education Code expressly forbids indefinite suspension of public school students. Teachers may suspend a pupil "for not exceeding one schoolday, plus the remainder of the schoolday during which the suspension is ordered, . . ." (§ 10601.) Suspension by a principal "shall not exceed 10 schooldays." (§ 10601.5.) Section 10607.5 provides, ". . . no student shall be suspended from school for more than 20 days in a school year," excepting cases of "transfer to another regular school for adjustment purposes, [in which case] additional days of suspension are limited to 10," and excepting also juvenile court cases, discussed *ante.* And even where the suspension is related to pending juvenile court proceedings, that court is admonished to be "expeditious" in the proceedings. (Welf. & Inst. Code, § 680.)

We come now to petitioners' real contention. They argue that section 10607 does not meet "minimum requirements" of due process before a public school student's suspension will be permitted. These minimum requirements, they insist, are: (1) The student must be given written notice of the pertinent charges and of his right to a hearing; (2) He must be allowed discovery of the school's evidence in order that his case be properly prepared; (3) A hearing must be held, at which he shall have the right (4) to counsel, (5) to an "impartial decision-maker," (6) to present evidence, (7) to confront and cross-examine adverse witnesses, (8) to written findings of fact based only upon substantial evidence produced at the hearing, and (9) to record the hearing at his own expense.

■ We first consider the contention that section 10607 denies due process of law to suspended public school students.

---

[2]Education Code section 10608: "If a pupil is expelled from school, the parent or guardian of the pupil may appeal to the county board of education which shall hold a hearing thereon and render its decision. The decision of the county board of education shall be final and binding upon the parent or guardian and the governing board expelling the pupil."

Due process of law is susceptible of no simple definition. We are well guided, however, by several writings of our state's Supreme Court.

■ "The various conflicting cases demonstrate that there is no rule of universal application concerning the right of an individual to present his views at a hearing prior to the institution of action affecting his substantial rights. What is due process depends on circumstances. It varies with the subject matter and the necessities of the situation. (Holmes, J., in *Moyer* v. *Peabody* (1909) 212 U.S. 78, 84 [53 L.Ed. 410, 416, 29 S.Ct. 235].) Its content is a function of many variables, including the nature of the right affected, the degree of danger caused by the proscribed condition or activity, and the availability of prompt remedial measures. . . ." (*Sokol* v. *Public Utilities Commission,* 65 Cal.2d 247, 254 [53 Cal.Rptr. 673, 418 P.2d 265].)

"The contours of due process . . . are not always the same. ■ As the court noted in *Cafeteria & Restaurant Workers Union* v. *McElroy* (1961) 367 U.S. 886, 895 [6 L.Ed.2d 1230, 1236, 81 S.Ct. 1743], 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. . . . [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the governmental function involved as well as of the private interest that has been affected by governmental action.' " (*Endler* v. *Schutzbank,* 68 Cal.2d 162, 170 [65 Cal.Rptr. 297, 436 P.2d 297].)

■ " '[D]ue process is not interested in mere technical formalism. It is the substance that is determinative of whether due process has been afforded.' " (*O'Reilly* v. *Board of Medical Examiners,* 66 Cal.2d 381, 384 [58 Cal.Rptr. 7, 426 P.2d 167].)

"It has always been recognized that 'the more important the rights at stake the more important must be the procedural safeguards surrounding those rights.' (*Speiser* v. *Randall* (1958) *supra,* 357 U.S. 513, 520-521 [2 L.Ed.2d 1460, 1469, 78 S.Ct. 1332].)" (*Flack* v. *Municipal Court,* 66 Cal.2d 981, 992 [59 Cal.Rptr. 872, 429 P.2d 192].)

The courts have often spoken on the subject of due process in the application of sanctions for academic misbehavior. It has been said that any analogy of student discipline to adult or juvenile criminal proceedings is not sound, and both impractical and detrimental to the educational atmosphere and functions. (See *Perlman* v. *Shasta Joint Jr. College Dist. Bd. of Trustees,* 9 Cal.App.3d 873, 879 [88 Cal.Rptr. 563]; *Goldberg* v. *Regents of the University of California,* 248 Cal.App.2d 867, 881 [57 Cal. Rptr. 463]; *Banks* v. *Board of Public Instruction of Dade County,* 314 F.

Supp. 285, 290, 292; *Esteban* v. *Central Missouri State College,* 290 F.Supp. 622, 628-629.) In the imposition of such sanctions a "full dress judicial hearing" is not required. (*Goldberg* v. *Regents of the University of California, supra,* p. 881; *Dixon* v. *Alabama State Board of Education,* 294 F.2d 150, 159; *Barker* v. *Hardway,* 283 F.Supp. 228, 236.) Further, such proceedings need not be adversary in nature. (*Barker* v. *Hardway, supra,* p. 236.) It has been held in such cases that due process does not imply a right to counsel (*Perlman* v. *Shasta Joint Jr. College Dist. Bd. of Trustees, supra,* pp. 879-880; *Madera* v. *Board of Education of City of New York, supra,* 386 F.2d 778, 785-786; *Due* v. *Florida A. and M. University,* 233 F.Supp. 396, 403); nor right of cross-examination (*Dixon* v. *Alabama State Board of Education, supra,* p. 159); nor right to a stenographic report of the proceedings (*Due* v. *Florida A. and M. University, supra,* p. 403); nor right to a separation of the "judging and prosecuting" function (*Perlman* v. *Shasta Joint Jr. College Dist. Bd. of Trustees, supra,* p. 883).

We find further relevant judicial comment on due process as it relates to student disciplinary action.

"Law and order in the classroom should be the responsibility of our respective educational systems. The courts should not usurp this function and turn disciplinary problems, involving suspensions, into criminal adversary proceedings—which they definitely are not. . . ." (*Madera* v. *Board of Education of City of New York, supra,* 386 F.2d 778, 788-789.)

"It may be conceded that a state college or university must necessarily possess a very wide latitude in disciplining its students and that this power should not be encumbered with restrictions which would embarrass the institution in maintaining good order and discipline among members of the student body and a proper relationship between the students and the school itself. It may be further conceded that it is a delicate matter for a court to interfere with the internal affairs and operations of a college or university, whether private or public, and that such interference should not occur in the absence of the most compelling reasons." (*Knight* v. *State Board of Education,* 200 F.Supp. 174, 179.)

"By judicial mandate to impose upon the academic community in student discipline the intricate, time consuming, sophisticated procedures, rules and safeguards of criminal law would frustrate the teaching process and render the institutional control impotent. This Court will not make such imposition." (*Esteban* v. *Central Missouri State College, supra,* 290 F. Supp. 622, 629.)

"Historically, the academic community has been unique in having its

own standards, rewards and punishments. Its members have been allowed to go about their business of teaching and learning largely free of outside interference. To compel such a community to recognize and enforce precisely the same standards and penalties that prevail in the broader social community would serve neither the special needs and interests of the educational institutions, nor the ultimate advantages that society derives therefrom. Thus, in an academic community, greater freedoms and greater restrictions may prevail than in society at large, and the subtle fixing of these limits should, in a large measure, be left to the educational institution itself." (*Goldberg* v. *Regents of the University of California, supra,* 248 Cal.App.2d 867, 880.)

■ The cases we have cited deal generally with student expulsion or its equivalent, indefinite suspension. Reasonably the demands of due process in situations, as here, of student suspension for a limited period fixed by law, must be less rigid, certainly not greater. Authority is generally in agreement. (See *Perlman* v. *Shasta Joint Jr. College Dist. Bd. of Trustees, supra,* 9 Cal.App.3d 873, 879; *Madera* v. *Board of Education of City of New York, supra,* 386 F.2d 778, 784; *Esteban* v. *Central Missouri State College, supra,* 290 F.Supp. 622, 629.)

Two recent federal cases concerning due process requirements upon the limited suspension of public school students have come to our attention.

The first is *Banks* v. *Board of Public Instruction of Dade County, supra,* 314 F.Supp. 285. Under consideration was a "School Board Policy-Regulation 5114" which set forth procedure to be employed in the suspension of students. The regulation provided that on a suspension for up to ten days the school principal must forthwith send a notice of the suspension to the student's parents. The notice is required to contain the student's name and the reason for the suspension and to invite the parents to contact the school and discuss the matter more thoroughly with the authorities. The regulation further provided that every effort shall be made to contact the parents in order to inform them of the reason for the suspension and that a formal notice has been mailed. The regulation did not provide for a hearing prior to the suspension.

Contention was made that the regulation denied suspended students due process of law. The district court disagreed, finding the regulation not to be "facially unconstitutional."

The court pointed out that the legal processes due suspended students must be less exacting than those due a person charged with crime. But nevertheless it held (citing *Dixon* v. *Alabama State Board of Education, supra,*

294 F.2d 150), "that notice [must] be given, a hearing provided for, and that the hearing [must] include the rudimentary adversary elements. Thus, the students should be given specific notice of the charges, the names of witnesses with a summary of their testimony, and should be given the opportunity to refute the charges by oral or written testimony. . . ." Such a hearing, it was held, need not be *prior* to the suspension.

Turning to the regulation, the court stated (p. 293) that it provided "for immediate notice of the suspension and the reasons therefor to be sent to the parents, and for the parents to be notified of the suspension before the student can be sent home. Moreover, the notice of suspension invites the parents to contact the school if they desire to discuss the matter. This procedure, which provides for a hearing after the fact upon request of the parents, while somewhat informal when contrasted with criminal procedure, is nonetheless consistent with the dictates of due process when examined in light of the public school setting."

*Williams* v. *Dade County School Board,* 441 F.2d 299, is the second "suspension" case. It arose in the same jurisdiction and concerned the same school board policy regulation as did *Banks* v. *Board of Public Instruction, supra,* 314 F.Supp. 285. It appeared that the regulation also permitted an additional "30-day suspension" after the initial one of 10 days. Additional procedures were required in the implementation of the second suspension. It was provided that the superintendent of schools (p. 300, fn. 1) "shall notify the parent by certified mail of the [additional 30-day] suspension and the basis for the action taken. . . ."

The court approved the result reached in *Banks* v. *Board of Public Instruction, supra,* and also found no constitutional fault in the "hearing after the fact" of the 10-day suspension. But it said (pp. 301-302): "In the case at bar we have a much different situation. An additional 30-day suspension was added after tensions began to subside and a need for summary action could not be overriding. . . . [¶] We realize, of course, that it is not necessary that students be given the kinds of procedural protections reserved for those accused of serious crime. Nevertheless, we feel that a penalty of this magnitude ought not be imposed without proper notice of the charges, and at least an attempt to ascertain accurately the facts involved and to give the student an opportunity to present his side of the case."

The court then held that the rudimentary requirements of the *Banks* v. *Board of Public Instruction, supra,* "after the fact" hearing were required *before* imposition of an additional 30-day suspension. Those requirements, it recited, were that (441 F.2d at p. 302): " '. . . the students should be given specific notice of the charges, the names of witnesses with a sum-

mary of their testimony and should be given the opportunity to refute the charges by oral or written testimony.' "

We believe that *Banks* and *Williams* generally correctly state the due process requirements upon a student's suspension from public school. But we think that the requirement of "names of *witnesses*" with a "summary of their *testimony*" and an opportunity to refute by "oral and written *testimony*" suggest a formalistic judicial sort of hearing which appears unnecessary and unreasonable, and which was probably unintended.[3] And we note that this language was taken verbatim from *Dixon* v. *Alabama State Board of Education, supra,* 294 F.2d 150, 159, which dealt with *expulsion* of college students, and where stricter standards are obviously required. (See Ed. Code, § 10608, fn. 2 *ante.*) Indeed, it has been held that the requirements of *Dixon* v. *Board of Education* are not reasonably applicable to *suspension* proceedings. (*Perlman* v. *Shasta Joint Jr. College Dist. Bd. of Trustees, supra,* 9 Cal.App.3d 873, 879; *Madera* v. *Board of Education of City of New York, supra,* 386 F.2d 778, 784.)

We think a better statement of the pertinent due process requirements was, as we have indicated, elsewhere stated by the *Williams* court (441 F. 2d at pp. 301-302) as: "[W]e feel that a penalty of this magnitude ought not to be imposed without proper notice of the charges, and at least an attempt to ascertain accurately the facts involved and to give the student an opportunity to present his side of the case."

*Perlman* v. *Shasta Joint Jr. College Dist. Bd. of Trustees, supra,* 9 Cal. App.3d 873, appears to be the only California case involving a student suspension. (Section 10607 referring to primary and secondary schools was there inapplicable.) A college student was suspended for three days. It was urged that the requirements, discussed *ante,* of *Dixon* v. *Alabama State Board of Education, supra,* 294 F.2d 150, were applicable. The court disagreed (p. 879), stating that the type of due process required in criminal court proceedings were unsuited to college suspension; and that "A reasonable rule would be that all that is required is that the student be given a fair notice and a fair hearing, the type of notice to depend upon the circumstances of the offense."

From the foregoing it becomes evident that in the case of public school student *suspensions,* a "full due process hearing" as elaborated and demanded by petitioners, is not constitutionally mandated.

---

[3]"Testimony" in its ordinary meaning connotes a previously administered oath. (*People* v. *Gilbert,* 217 Cal.App.2d 662 [31 Cal.Rptr. 920].)

"A witness is a person whose declaration under oath is received as evidence for any purpose, whether such declaration be made on oral examination, or by deposition or affidavit." (Code Civ. Proc., § 1878.)

■ Instead, our consideration of the pertinent fundamental principles, and the authority to which we have adverted, impels us to conclude that due process requirements, upon a suspension, are met by the following procedures:

(1) Notice by telephone, mail, or other appropriate method, to the parents or guardian within a reasonable time *after* the suspension, advising of the fact of such suspension, its duration, and the reasons therefor, and further stating that if desired a prompt meeting or hearing will be held at which the suspension may be discussed with school officials.

(2) If requested, a meeting or hearing within a reasonable time, at which the suspended student may also be present, where the student shall be afforded an opportunity to present informal proof of his side of the case.

We advert now to section 10607. We consider its language and that which is necessarily implied therefrom. ■ "[W]hatever is necessarily implied in a statute is as much a part of it as that which is expressed. . . ." (*Johnston* v. *Baker,* 167 Cal. 260, 264 [139 P. 86]; *Currieri* v. *City of Roseville,* 4 Cal.App.3d 997, 1001 [84 Cal.Rptr. 615].) ■ We should so construe the statute, if its language permits, as to render it valid and constitutional rather than invalid and unconstitutional. (*Erlich* v. *Municipal Court,* 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334].) ■ And we must presume that the Legislature intended to enact a valid statute, and adopt an interpretation that, consistent with the statutory language and purpose, eliminates doubt as to its constitutionality. (*In re Kay,* 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142].)

■ We restate here the pertinent provision of Education Code section 10607: "On or before the third consecutive school day of any given period of suspension, the parent or guardian of the pupil involved shall be asked to attend a meeting with school officials, at which time the causes, the duration, the school policy involved, and other matters pertinent to the suspension, shall be discussed. If the parent or guardian fails to join in such a conference, the school officials shall send him by mail a letter stating the fact that suspension has been implemented and setting forth all other data pertinent to the action."

We note preliminarily that in two closely positioned Education Code sections dealing with closely related subject matter, the Legislature has used different terms. Section 10607, dealing with temporary suspension of students, calls for a "meeting" or "conference" with unspecified "school officials" for discussion of the suspension. Section 10608 (see fn. 2, *ante*) concerning "expulsion" of a student requires a "hearing" thereon before the "county board of education" which shall thereafter "render its decision."

Such a radical change in the wording of adjacent code sections "cannot be deemed meaningless and without design." (*Ruiz* v. *Industrial Acc. Com.,* 45 Cal.2d 409, 413 [289 P.2d 229].) " 'When different language is used in the same connection in different parts of a statute it is to be presumed the Legislature intended a different meaning and effect.' " (*People* v. *Ector,* 231 Cal.App.2d 619, 625 [42 Cal.Rptr. 388].)

In *People* v. *Pennington,* 66 Cal.2d 508, 521 [58 Cal.Rptr. 374, 426 P.2d 942], it is said, "A 'hearing' is generally understood to be a proceeding where evidence is taken to the end of determining an issue of fact and a decision made on the basis of that evidence. . . ." It must reasonably be assumed that the Legislature in enacting section 10607 also understood the ordinary meaining of the word "hearing" and chose to mandate something less than a "full due process hearing" as the term is used by petitioners.

 Adverting to section 10607 we observe that upon failure of the parent or guardian to attend the "meeting" with school officials, he shall be notified by letter that the "suspension has been implemented [i.e., carried into effect] and setting forth all other data" pertinent to the suspension. This must be construed as indicating that the suspension initially was provisional, to be confirmed and continued only in the absence of disclosure of good reason at the meeting why it should not.

We further construe the section to provide the following. On or before the third day of a student's suspension notice shall be given his parent or guardian by mail, telephone, or other reasonable means, of the fact of and reason for the suspension, with a request that the parent or guardian attend a meeting with the school officials concerning the suspension. The meeting shall be promptly held unless the parent or guardian shall otherwise request. At the meeting "the causes, the duration, the school policy involved, and other matters pertinent to the suspension, shall be discussed." The suspended student may of course attend the meeting. "Matters pertinent to the suspension" would include any reason, or informal proof, why the suspension should not continue, including, but not limited to, claims of mistaken identity or obviously false charges. If good reason to the contrary is not shown the suspension may then be implemented and continued. Upon failure of the parent or guardian to attend the meeting he shall be advised by "letter stating the fact that suspension has been implemented and setting forth all other data pertinent to the action."

So construed section 10607 affords to the suspended student "proper notice of the charges, and at least an attempt to ascertain accurately the facts involved and to give the student an opportunity to present his side of the

case." (*Williams* v. *Dade County School Board, supra,* 441 F.2d 299, 301-302.) And it gives to the student "fair notice and a fair hearing" in the circumstances of limited suspension. (See *Perlman* v. *Shasta Joint Jr. College Dist. Bd. of Trustees, supra,* 9 Cal.App.3d 873, 879.)

We accordingly hold that section 10607, as interpreted by this court, meets the due process of law demands of the state and federal Constitutions.

We briefly discuss other matters argued or pointed out by petitioners. Since we find no illegal suspensions, no merit is seen in petitioners' demands that we order their "illegal suspensions" expunged, and that additional education be provided to compensate for such "illegal" action. In any event we believe the question whether school suspension records should be expunged is a proper matter of legislative, not judicial, concern. And the trial court could, and presumably did, conclude from the evidence that the respondent school district was ready through the high school's "counseling office" to assist petitioners as well as all students in making up lost school work.

Affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied October 19, 1971, and appellants' petition for a hearing by the Supreme Court was denied November 18, 1971. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.