[No. B008021. Second Dist., Div. Seven. Nov. 19, 1985.]

APOLLO ESTATES, INC., et al., Plaintiffs and Appellants, v. DEPARTMENT OF REAL ESTATE, Defendant and Respondent.

COUNSEL

Alvin Hirsch, Horvitz & Levy, Barry R. Levy and Frederic D. Cohen for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Mark P. Richelson, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**POUNDERS, J.**[*]—Petitioners Apollo Estates, Inc., and Benjamin Ballinger, Jr., appeal from a judgment denying their petition for a writ of mandate which sought to set aside respondent Department of Real Estate's order revoking petitioners' real estate licenses and in lieu thereof to reinstate petitioners' licenses as they existed before the order was issued or in conformity with the proposed decision of the administrative law judge. The administrative decision would have revoked the restricted real estate broker's licenses subject to reapplication not sooner than 30 days from the date of the decision.

Petitioners here contend that the trial court applied the wrong standard for review, the appropriate standard being independent judgment, and that in any case under the substantial evidence test the judgment must be reversed and the penalty be found grossly disproportionate to the alleged misconduct.

### FACTUAL BACKGROUND

On May 10, 1983, the Department of Real Estate (DRE) filed an accusation against petitioners alleging three separate causes of accusation essentially stating that (1) the corporate powers of petitioner Apollo Estates, Inc. had been suspended, (2) the conduct or omission of petitioners involved willful violation of regulations 2831 and 2831.1,[1] and Business and Professions Code section 10177, subdivision (g), negligence, and fraud or dishonest dealing, and (3) failure to maintain a trust account and trust fund records and failure to have reviewed, initialed, and dated documents prepared or signed by salespersons in the employ of petitioners.

Following a hearing on the Accusation before an administrative law judge, a proposed decision was issued on December 21, 1983. The DRE Commissioner (Commissioner) declined to adopt the proposed decision and served petitioners with notice under Government Code section 11517, subdivision (c), that the case would be decided by the Commissioner upon the record and any written argument offered by petitioners. Thereafter, the Real Estate Commissioner revoked petitioners' licenses for acts and omissions violating Business and Professional Code section 10176, subdivision (i), and section 10177, subdivisions (d) and (g).

[*]Assigned by the Chairperson of the Judicial Council.
[1]Title 10, California Administrative Code.

On July 19, 1984, petitioners filed a petition for writ of mandate pursuant to section 1094.5 of the Code of Civil Procedure. On August 24, 1984, a hearing was held during which the administrative record was received in evidence by reference and the parties permitted to argue. The evidence was reviewed under the "substantial evidence rule" which petitioners' counsel admitted was the appropriate means of review. The petition was denied, and the order was stayed, first by the trial court and subsequently by this court.

I

PREVIOUS HISTORY

On February 14, 1979, DRE issued to petitioners an order to desist and refrain which, after reviewing actions taken and omissions made by petitioners during 1977 and 1978, ordered petitioners to desist and refrain from performing any activities requiring a real estate license unless and until petitioners:

"1. Review and initial all real estate agreements prepared or signed by salespersons in your employ, or delegate said duties in accordance with Regulation 2725;

". . . . . . . . . . . . . . . . . . . . . . .

"3. Reinstate Apollo Estates, Inc. in compliance with California Revenue and Taxation Code section 23302;

". . . . . . . . . . . . . . . . . . . . . . .

"5. Establish and maintain both formal cash disbursement journals or other records of the receipt and disposition of trust funds in accordance with Regulation 2831; and separate records for each beneficiary or transaction in accordance with Regulation 2831.1;

"6. Allow withdrawals from the trust account only by licensed or bonded persons in accordance with Regulation 2834."

Thereafter, effective March 23, 1982, the DRE Commissioner adopted a proposed decision which resulted from a stipulation to conclude matters following an earlier accusation. Among the findings of fact was that petitioner Ballinger made and uttered a check in the amount of $1,164.50 to Allstate Fence Company drawn on a broker's trust account maintained at the Bank of America. This check was returned by the bank for insufficient

funds in the account, such conduct on petitioners' part being found to constitute dishonest dealing.

It was further found that in response to a complaint from Allstate Fence Co., DRE made a demand upon petitioner Ballinger for records of petitioners relating to real estate transactions and for the records required to be maintained and produced by petitioners on trust accounts pursuant to sections 2831 and 2831.1 of the regulations and section 10146 of the Business and Professions Code. Petitioner Ballinger refused to produce these records in violation of section 10148 of the Business and Professions Code. All of the allegations in the Accusation were found to be true pursuant to stipulation and were admitted to be true by petitioners for the purpose of the administrative proceeding only.

Pursuant to the foregoing findings of fact, the administrative law judge determined that grounds existed to suspend or revoke the licenses of petitioners pursuant to section 10177, subdivisions (d) and (j), of the Business and Professions Code. An order was entered revoking petitioners' licenses and providing for the issuance of a restricted real estate broker's license to petitioners subject to all of the provisions of section 10156.7 and the section 10156.6 limitations, conditions, and restrictions imposed in the order.

II

CURRENT VIOLATIONS

On February 13, 1982, the same month that the DRE Commissioner adopted the 1982 proposed decision of the administrative law judge and only *two days* after the decision was signed by the judge, Mr. Micah Vessels and his wife sought a manager to collect the rents for their property at 1448 W. 94th Place in Los Angeles by first contacting Kathleen Truisi, a broker for Century 21. She subsequently found petitioners to manage the property, because the property was out of her district.

After signing a Century 21 VIP Referral, Mr. Vessels received correspondence from petitioner Ballinger dated March 12, 1982, stating that petitioner Ballinger was going to be the property manager. He had been a licensed real estate broker since 1957. The Vessels agreed to let petitioners manage the property, including making mortgage payments.

Petitioner Ballinger located a tenant and received the lease payments, placing payments by both check and cash into a file folder. By the time the March 15th $367 mortgage payment was due, petitioners had collected $600

in cash which petitioner Ballinger took as his fee for locating tenants. Subsequently, petitioner Ballinger attempted to pay the mortgage by use of an insufficient funds check issued from his insurance agency's account.

Thereafter, Mr. Vessels received a notice from First Interstate Bank that the mortgage was not being paid. He spoke to petitioner Ballinger, who said that he was going to take care of the matter. The mortgage was paid late.

In June, Mr. Vessels informed petitioner that he no longer wished him to be the property manager. Petitioner Ballinger provided a statement of the account, including expenses for plumbing repairs and gardening, which Mr. Vessels found to be in error. Following a telephone conversation, petitioner Ballinger sent a revised statement reflecting correction of the $200 error. Mr. Vessels received a personal money order dated June 3, 1982 in the amount of $468.32.

On February 1, 1983, Theresa Gonzales, a real estate specialist for the Department of Real Estate, conducted an office survey at the Apollo Estates, Inc. offices on 50th and Normandie due to a complaint which had been received from the Vessels naming petitioner Ballinger. Approximately one dozen salespeople were employed by petitioner. Ms. Gonzales examined three transactions conducted by petitioner Apollo Estates, Inc.

Ms. Gonzales found an agreement to purchase and a receipt for deposit dated January 6, 1983, with the salesman's name of "Thomas" which was initialed and dated by petitioner Ballinger. She also found another agreement to purchase and receipt for deposit dated July 2, 1982, by the same salesman which had not been dated or initialed by petitioner Ballinger.

During the course of the survey, petitioner Ballinger told Ms. Gonzales that he did not maintain a trust account or a columnar journal of trust funds received and not deposited in a trust account. Petitioner Ballinger did not show any accounting indicating receipt and disposition of trust funds. He showed Ms. Gonzales a statement of account for the Vessels' transaction.

In a discussion with petitioner Ballinger regarding the trust funds received and disbursed, Ms. Gonzales explained to him that real estate law required that he maintain columnar journals showing all trust funds received. Petitioner Ballinger listened to the statement and then said that he felt that the department was "picking on him." Petitioner Ballinger also explained that he issued the mortgage check from his insurance agency fund because he did not maintain a trust account.

Subsequently, the Vessels recovered over $450 from petitioner Ballinger in a small claims action.

DISCUSSION

I

THE STANDARD FOR REVIEW

 Relying upon *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242], petitioners assert that the trial court applied the wrong standard for review in determining the petition for writ of mandate. While recognizing that they misled the trial court at the time of the hearing by asserting that the standard for review was that of "substantial evidence," petitioners argue that the standard for review is the "independent judgment" test. Petitioners had urged such a test in their written points and authorities.

 Section 1094.5 of the Code of Civil Procedure details the procedure for the review of administrative orders or decisions. Subdivision (c) outlines the standard for review:

"Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its *independent judgment* on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases, abuse of discretion is established if the court determines that the findings are not supported by *substantial evidence* in the light of the whole record." (Italics added.) It has been recognized that this section "arose out of and perpetuated a state of judicially created uncertainty as to which of two standards apply in a particular case." (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 345 [156 Cal.Rptr. 1, 595 P.2d 579].)

Our Supreme Court has directed that the choice of the standard for review depends upon whether "an administrative decision or class of decisions substantially affects fundamental vested rights and thus requires independent judgment review." (*Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 144; see also *Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 780 [163 Cal.Rptr. 619, 608 P.2d 707].) As the *Bixby* court explains, the case-by-case analysis considers (1) the "nature of the right of the individual" to determine whether the right is fundamental and basic and will suffer substantial interference by the action of the administrative agency, and (2)

whether that right is "possessed by, and vested in, the individual or merely sought by him." (*Ibid.*)[2]

 It is clear, and respondent does not contend to the contrary, that the court to which the application for mandate is made to secure the *restoration of a professional license* must exercise an independent judgment on the facts, because the right to continue one's trade or profession is fundamental. (*Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 85 [87 P.2d 848]; *Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 145; cf. *Nelson* v. *Dept. of Real Estate* (1984) 161 Cal.App.3d 939, 940-943 [209 Cal.Rptr. 368].)
 The issue in this case, however, is whether this fundamental right is vested. Respondent DRE relies upon the language of the statutes creating the restricted real estate license in arguing that no vested right was conferred upon petitioners.

Section 10156.5 of the Business and Professions Code provides that the Commissioner *may* issue a restricted license in two situations where the applicants are otherwise disqualified: (1) when a person has been found to have violated portions of the Business and Professions Code where such violation would justify suspension or revocation of the license, and (2) when an applicant for a regular license failed to make a satisfactory showing that all of the requirements for the license have been met.[3]

The tentative nature of the privileges granted by a restricted license is described in the language of section 10156.7: "A restricted license issued pursuant to Section 10156.5 does not confer any *property right* in the privileges to be exercised thereunder, and the holder of a restricted license does not have the *right to renewal* of such license. [¶] The commissioner may without hearing issue an order suspending the licensee's right to further exercise any privileges granted under a restricted license pending final determination made after formal hearing." (Italics added.)

---

[2]Petitioners' argument that the "independent judgment test" should be applied any time the administrative action is not purely discretionary is not supported by these Supreme Court decisions. No valid reason has been advanced to justify abandonment of the rules laid down so often by our highest court.

[3]Section 10156.5 of the Business and Professions Code states: "The commissioner may issue a restricted license to a person:

"(a) Who is or has been licensed under this chapter and who has been found by the commissioner after a hearing to have violated provisions of Division 4 of this code [§ 10000 et seq.] where such violation would justify the suspension or revocation of the license.

"(b) Who is applying for a license under this chapter, who has met the examination and experience requirements, but who has been found by the commissioner after a hearing to have failed to have made a satisfactory showing that he meets all of the other requirements for the license applied for, where such failure would justify the denial of the license applied for."

Read together, sections 10156.5 and 10156.7 reveal the legislative intent to provide the DRE Commissioner with a mid-phase response between the absolutes of revoking or denying a license on the one hand and allowing the unjustified retention or acquisition of a license on the other.

Respondent DRE also argues that these sections are substantially the same as former Insurance Code sections 1690 and 1690.3 which have been interpreted as requiring a trial court to determine only whether there is substantial evidence to support the Commissioner's conclusion. (*Foster* v. *McConnell* (1958) 162 Cal.App.2d 701, 704-705 [329 P.2d 32].) Petitioners, however, counter that section 1690.3 (now § 1742) had a critical distinction, the sentence stating that: "The commissioner may, with or without hearing, revoke a restricted license whether the holder has violated any provision of this code or restriction or condition of the license or not." This omission, assert petitioners, makes their rights "of an entirely different character." Nevertheless, the remaining provisions of the two sections are sufficiently analogous to compel the conclusion that the privileges under the restricted license are not vested.

We find that the situation presented here is quite similar to that in *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 824-825 [129 Cal.Rptr. 443, 548 P.2d 1115], wherein our Supreme Court ruled that the right of probationary teachers to be rehired for the next school year is not vested, requiring the substantial evidence rule on review. Specifically, the court found that: "[A]n applicant for a teaching position does not possess a vested right to be hired, but a tenured teacher possessed a vested right to be retained. Between these two falls the instant case: one's right to be rehired following a trial period to determine competency and effectiveness prior to being granted tenure. . . .

"By labeling the position probationary, the Legislature had clearly advised the employee that the position is neither vested nor permanent. Probation means the teacher is on trial—his competence and suitability remain to be determined. . . . Probationary is the opposite of vested." (*Turner* v. *Board of Trustees, supra,* 16 Cal.3d at p. 825.)

█ Similarly, we hold that the very nature of a restricted license is an indication to the holder that the rights granted thereunder are neither vested nor permanent. The holder of a restricted license has been found to qualify only for a trial period during which time he must satisfactorily show that he meets the requirements for a permanent license. When his prior conduct would have justified suspension, revocation, or outright denial of a license,

his expectations must be limited and tentative. The right not being vested, the standard for review is that of substantial evidence.

## II

### SUFFICIENCY OF THE EVIDENCE

The DRE Commissioner made two determinations subject to challenge here. He first decided that there was cause established for disciplinary action against the licenses and license rights of petitioners for four basic acts or omissions in violation of the Business and Professions Code. Next, the Commissioner determined that the past history of petitioners with regard to the order to desist and refrain in 1979 and the revocation of petitioners' licenses in 1982 along with the current violations persuaded him to the conclusion "that the public interest would not be well served by permitting either respondent to continue to perform acts for which a real estate license is required under either a plenary or restricted license."

We first examine the four reasons given for the disciplinary action. The first and fourth cite Business and Professions Code section 10177, subdivision (d), which provides that the Commissioner may suspend, revoke, or deny a license to any person who has: "Willfully disregarded or violated any of the provisions of the Real Estate Law (commencing with Section 10000 of this code) or of Chapter I (commencing with Section 11000) of Part 2 of this division or of the rules and regulations of the commissioner for the administration and enforcement of the Real Estate Law and Chapter I of Part 2 of this division."

### A. *Failure to Maintain Records*

The first act or omission specified under this violation is the failure to "maintain any of the records prescribed by sections 2831 and 2831.1 of Title 10, California Administrative Code, to account for the receipt and disbursement of funds received in trust for the Vessels or any other person on whose behalf [petitioner] Apollo received trust funds."

Sections 2831 and 2831.1 depend upon a reading of section 2830, which provides in part: "If a real estate broker who accepts funds in trust from others in the course of carrying on activities for which a real estate license is required does not effect compliance with Section 10145 of the code by immediately placing such funds into a neutral escrow depository or into the hands of a principal on whose behalf the funds were received, the broker shall deposit the funds upon receipt into a trust fund account in the name of

the broker as trustee at a bank or other financial institution." Section 2831[4] essentially requires that brokers "keep a record of all trust funds received, including uncashed checks held pursuant to instructions of his or her principal," such record to include certain specified information. Section 2831.1[5] further requires that brokers "keep a separate record for each beneficiary or transaction, accounting for all funds which have been deposited to the broker's trust bank account."

The record reveals that during the office survey based upon the complaint by Mr. Vessels, petitioner Ballinger admitted that he did not maintain either trust accounts or columnar journals of trust funds received and not deposited. For the Vessels' transaction he showed the examiner only a "statement of account." This transaction was one for which a broker's license was required. Section 10131 of the Business and Professions Code provides in part: "A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others:

" . . . . . . . . . . . . . . . . . . . .

"(b) Leases or rents or offers to lease or rents, or places for rent, or

---

[4] "2831. Trust Fund Records to be Maintained. (a) Every broker shall keep a record of all trust funds received, including uncashed checks held pursuant to instructions of his or her principal. This record, including records maintained under an automated data processing system, shall set forth the following information in columnar form:
"(1) Date funds received.
"(2) From whom funds received.
"(3) Amount received.
"(4) With respect to funds deposited in trust bank account, date of said deposit.
"(5) With respect to funds previously deposited to trust bank account, check number and date of related disbursement.
"(6) With respect to funds not deposited in trust bank account, identity of other depository and date funds were forwarded.
"(7) Daily balance of trust bank account."

[5] "2831.1. Separate Record for Each Beneficiary or Transaction. (a) A broker shall keep a separate record for each beneficiary or transaction, accounting for all funds which have been deposited to the broker's trust bank account and interest, if any, earned on the funds on deposit. This record shall include information sufficient to identify the transaction and the parties to the transaction. Each record shall set forth the following information in columnar form:
"(1) Date of deposit.
"(2) Amount of deposit.
"(3) Date of each related disbursement.
"(4) Check number of each related disbursement.
"(5) Amount of each related disbursement.
"(6) If applicable, dates and amounts of interest earned and credited to the account.
"(b) Maintenance of trust ledgers of separate beneficiaries or transactions, or similar records, or automated data processing systems, in accordance with generally accepted accounting principles will constitute compliance with subdivision (a)."

solicits listings of places for rent, or solicits for prospective tenants, or negotiates the sale, purchase or exchanges of leases on real property, or on a business opportunity, or collects rents from real property, or improvements thereon, or from business opportunities." Accordingly, petitioners violated sections 2831 and 2831.1 by failing to keep the requisite records of the account.

## B. *Violation of the Real Estate Law*

As a further determination of issues requiring disciplinary action against petitioners, the Commissioner found that petitioners willfully disregarded the Real Estate Law and the rules and regulations relating to the enforcement of that law when on February 1, 1983, during the office survey, it was disclosed (1) that petitioners failed to maintain a trust account for the receipt and disbursement of trust funds in violation of section 2830; (2) that petitioners failed to establish and maintain trust fund records in violation of sections 2831 and 2831.1; (3) that petitioners failed to have documents prepared or signed by a salesperson for petitioner Apollo reviewed, initialed, and dated by petitioner Ballinger in violation of section 2725; and finally (4) that petitioners failed to retain copies of canceled checks for a period of three years after the closing of the transaction to which the check applied in violation of Business and Professions Code section 10148.

Petitioners' violation of sections 2830, 2831, and 2831.1 as found in the first two points were manifested by petitioner Ballinger's statement that no trust funds or columnar journals were maintained for the accounts.

The third point involved section 2725, which requires that "[e]very instrument prepared or signed by a real estate salesperson in connection with any transaction for which a real estate license is required . . . shall be reviewed, initialed and dated by the broker of the salesperson within five working days after preparation or signing . . . ." With respect to the salesperson named Thomas, the records examined during the office survey revealed that some of the transactions initiated by him were initialed by petitioner Ballinger and others were not. Specifically, the one dated July 2, 1982, was not initialed and dated by petitioner Ballinger but the one dated January 6, 1983, was. Contrary to petitioners' argument that there was no evidence Mr. Thomas lacked authority to initial the instruments, petitioner's initials on the *later* document indicate the lack of authority for the *earlier* document.

Finally, section 10148 of the Business and Professions Code requires that a broker "shall retain for three years copies of all listings, deposit receipts,

canceled checks, trust records, and other documents executed by him or obtained by him in connection with any transaction for which a real estate broker license is required." The Commissioner's finding on this fourth point that petitioner failed to retain copies of canceled checks for the three-year period was well founded. Though required by a valid notice to produce, petitioners failed to bring to the hearing before the administrative law judge the bank statements and checks demanded by DRE. Petitioner Ballinger closed his account and threw everything away, even though he was required by law to retain the records for three years.

As to the above findings under subdivision (d) of section 10177, petitioners argue that there is no proof they acted "willfully." ▇ The term "willfully" is most appropriately defined here as " 'done deliberately: not accidental or without purpose.' " (*People* v. *Clem* (1974) 39 Cal.App.3d 539, 542 [114 Cal.Rptr. 359].) ▇ The evidence at the hearing cogently demonstrates that petitioners acted willfully.

Petitioners were twice warned to conform their actions to the requirements of law. On February 7, 1979, the desist and refrain order required among other things that petitioners "[e]stablish and maintain both formal cash disbursement journals or other records of the receipt and disposition of trust funds in accordance with Regulation 2831; and separate records for each beneficiary or transaction in accordance with Regulation 2831.1 . . . ." The Commissioner's February 22, 1982, decision similarly established that petitioner refused to produce the required records of real estate transactions necessitated by sections 2831 and 2831.1 of the regulations and section 10146 of the Business and Professions Code. Following so many warnings, petitioners must be held to have acted deliberately and not accidentally.

### C. *Timely and Accurate Accountings*

The third cause for disciplinary action found by the Commissioner was for violation of Business and Professions Code section 10177, subdivision (g), for petitioners' failure to render timely and accurate accountings to the Vessels for the receipt and disbursement of rents received from tenants despite demands by the Vessels during the months of March, April, and May of 1982. Subdivision (g) authorizes the Commissioner to suspend, revoke, or deny a license for "[d]emonstrated negligence or incompetence in performing any act for which he is required to hold a license."

As to whether or not timely and accurate accountings were rendered to the Vessels as requested, there was a conflict in the evidence. Mr. Vessels

testified that he "never received anything" even though he informed petitioner Ballinger he wanted a copy of all work orders. Petitioner Ballinger testified that he sent Mr. Vessels a copy of the bills along with his monthly statement. This represents a conflict in the evidence which was for the trier of fact to resolve.

### D. *Fraud or Dishonest Dealing*

Finally, cause for disciplinary action was found by the Commissioner under Business and Professions Code section 10176, subdivision (i), occurring when petitioner Ballinger issued a check to First Interstate Bank for the mortgage payment out of his insurance agency account which had insufficient funds, petitioner Ballinger having reason to know that there were insufficient funds.

Business and Professions Code section 10176, subdivision (j) provides that the Commissioner may upon verified complaint investigate the actions of any person engaged in the business and may suspend or revoke a real estate license for certain specified conduct, including "[a]ny other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing."

Petitioners cite the case of *Small* v. *Smith* (1971) 16 Cal.App.3d 450, 456 [94 Cal.Rptr. 136], for the proposition that "dishonest dealing" in the context of a real estate disciplinary proceeding necessarily includes "the element of bad faith . . . . [I]t means fraud, deception, betrayal, faithlessness." Respondent contends on the other hand that a real estate broker often acts in a confidential and fiduciary capacity, requiring that the term "honesty" be given the broadest possible meaning. (See *Golde* v. *Fox* (1979) 98 Cal.App.3d 167, 176-178 [159 Cal.Rptr. 864].) Under any construction of the term, however, petitioners' actions amounted to fraud and dishonest dealing.

When petitioner Ballinger issued a check on April 20, 1982 for $381.68 for the mortgage payment, he then knew that the insurance account on which he drew the check had insufficient funds. At that time he had already collected $1,700 from the tenants and still had at least $600 in cash, which he diverted to his own payment rather than paying the mortgage. This was clearly a breach of his fiduciary obligation to the Vessels. It was a further extension of petitioner's misconduct and betrayal in failing to maintain trust fund accounts and the requisite accounting for the receipts and disbursements therefrom.

The findings of the Commissioner for DRE have substantial support in the record, which reveals a licensee's avarice and disdain for the needs of others.

## III

### PROPORTIONALITY OF THE PENALTY

Petitioners assert that the revocation of the restricted licenses amounted to a penalty which was grossly disproportionate to the alleged misconduct. Petitioner Ballinger argues that the penalty ignored (a) the isolated nature of his transgressions, (b) the fact that he had no prior experience in handling client trust funds and yet properly segregated and accounted for all such funds, (c) the absence of harm to the Vessels by petitioners' conduct, and (d) the fact that petitioner Ballinger is no longer handling trust funds for clients. Petitioners therefore urge this court to find that DRE abused its discretion by imposing a penalty which was too harsh in light of the surrounding facts and circumstances, citing *Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87 [17 Cal.Rptr. 488, 366 P.2d 816] and *O'Reilly* v. *Board of Medical Examiners* (1967) 66 Cal.2d 381, 388-389 [58 Cal.Rptr. 7, 426 P.2d 167].

Respondent on the other hand adds that a reviewing court is not free under that standard to substitute its own discretion as to the penalties imposed by an administrative body but must instead determine whether the action taken was arbitrary, capricious, or patently abusive in the exercise of the administrative agency's discretion. (*Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966-967 [103 Cal.Rptr. 455].)

It is obvious that petitioners continued and repeated violations of the real estate law cannot be sanctioned. A brief history of petitioners' misconduct supports the Commissioner's determination.

In 1979 petitioners were ordered by DRE to review and initial all real estate agreements prepared and signed by salespersons in their employ in accordance with regulation 2725, an order which they again violated in this case. At the same time petitioners were ordered to establish and maintain formal cash disbursements, journals, and other records of receipt and disposition of trust funds in accordance with regulation 2831, an order which they again violated in this case.

In 1982 only days before these new violations, petitioners stipulated that grounds existed to suspend or revoke their licenses for violation of section

10177, subdivisions (d) and (j), of the Business and Professions Code for having issued an insufficient funds check to the Bank of America while acting as real estate brokers, a violation which occurred again in this case.

Finally, it was also stipulated that in 1982 DRE made demands upon petitioner Ballinger for records of the above transactions and petitioner Ballinger refused to produce the records in violation of section 10148 of the Business and Professions Code, a violation which occurred again in this case.

When a licensee makes repeated and constant flagrant violations of the statutes and rules designed to protect the public in real estate transactions, the privilege to act as a real estate broker must be revoked. Petitioner Ballinger's obstinate refusal to comply with external limitations leaves no other alternative.

## DISPOSITION

The judgment denying the petition for writ of mandate is affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 12, 1986.